[No. C037073. Third Dist. Mar. 16, 2001.]

DONALD R. DEARY, as Executor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
CAROLEE HENDRICK, Real Party in Interest.

**COUNSEL**

Porter, Scott, Weiberg & Delehant, Russell G. Porter and Robin E. Weideman for Petitioners.

No appearance for Respondent.

Hansen, Boyd, Culhane & Watson, Hartley T. Hansen, Julia D. Brynelson and Thomas L. Riordan for Real Party in Interest.

## OPINION

**NICHOLSON, Acting P. J.**—Petitioners Donald R. Deary, executor of the Estate of Roy Grant Deary, Jr., et al. (defendants), contend that a discovery order issued by respondent Superior Court of Sacramento County requiring them to provide copies of estate tax returns to real party in interest Carolee Hendrick (plaintiff) violates their privilege to keep such returns confidential. They seek a writ of mandate from this court directing respondent to set aside its order requiring disclosure of the returns. We shall grant the requested relief.[1]

Plaintiff's cross-complaint alleges that decedent Roy Grant Deary, Jr. (Deary) promised to provide a home and financial support to her for the rest of her life in return for her giving up her own employment, moving into his residence, and becoming his full-time homemaker, companion and caregiver. Deary died in 1999. Neither his will, nor the family trust he established prior to death, provides plaintiff the benefits she claims were promised. Her creditor's claim against the estate was rejected and, in December 1999, she filed her cross-complaint, which states nine causes of action seeking, under a variety of legal theories, to recover from the assets of the estate the consideration she claims entitlement to in return for having carried out her part of the agreement with Deary.

In March 2000 plaintiff served a notice to take the deposition of Deary's estate planning attorneys, who are also apparently representing the personal representative of his estate. The notice included a request that the deponents produce several categories of documents, one of which was described as " 'ANY AND ALL WRITINGS,' regarding the estate planning of Roy Grant Deary, Jr., including, but not limited to, all wills, codicils, trusts and/or any other mechanism discussed and/or implemented regarding estate planning." While some documents were produced, defendants interposed objections to large parts of the request on a variety of grounds, including claims of lack of relevance and the attorney-client and work-product privileges. In conjunction with their objections, defendants submitted a "privilege log" describing in somewhat general terms the items withheld. Plaintiff filed a motion to compel production of the withheld documents.

Defendants' opposition to the motion to compel includes the first specific mention of the estate tax returns and alludes to the privilege now at issue. In

---

[1]The underlying superior court proceeding originated with the current plaintiff/real party in interest being named as the sole defendant in a complaint filed by Nor-Cal Beverage Company. We are advised by the parties that the Nor-Cal suit has since been resolved. However, while that matter was active, plaintiff filed a related cross-complaint against petitioners (defendants). Since the cross-complaint is the only portion of the case still pending in the trial court, we shall for purposes of clarity refer to cross-complainant Hendrick as "plaintiff" and cross-defendants (the estate and related parties) as "defendants."

a footnote to their argument that the constitutional right of privacy shielded certain documents from Hendrick's discovery demands, defendants state they "have also withheld tax planning documents and tax returns, primarily on the basis that such documents are not responsive to Plaintiff's requests as they do not relate to mechanisms for disposing of property in Deary's estate. However, it should also be noted that such documents are protected from disclosure by the right of privacy. (See *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621].)"[2]

After the August 29 hearing on plaintiff's motion to compel, the superior court issued a lengthy order which resolved many of the issues relating to defendant's discovery requests, but left others for future determination. As to these undecided questions, the court directed the parties to submit additional briefing, and ordered defendants to provide a revised privilege log and complete copies for review in camera of certain documents which had been disclosed in redacted form. One of the issues the court did rule on was defendants' claim that all documents prepared subsequent to Deary's death were irrelevant to the underlying dispute and therefore not discoverable. The court overruled that objection, finding it to be overbroad, and ordered defendants to either provide the documents covered by Hendrick's requests, or submit a revised privilege log identifying with particularity any items withheld.

In addition, at the close of the August 29 hearing the superior court requested that the parties meet and confer on the remaining issues, and after doing so prepare for the court's benefit a "Joint Statement" clarifying their positions. That "Joint Statement" was filed on September 29. In one of the sections explaining their position on various issues, defendants included another footnote reference to the estate tax returns, again citing *Webb v. Standard Oil Co., supra*, 49 Cal.2d 509, and essentially restating what they had said in their opposition to the motion to compel.

There ensued another round of briefing, additional document production, and a hearing in chambers, which culminated with defendants filing a posthearing memorandum bearing the title "Supplemental Statement in Support of Second Amended Production of Documents and Privilege Log." In that pleading, defendants explained in greater detail what had and had not been produced, specifically noting they had withheld the Deary estate tax returns and "documents relating to the preparation of that return. . . ." Defendants also expanded somewhat on their prior footnotes regarding those

---

[2]The *Webb* case, as we shall explain below, actually involves not the constitutional right to privacy, but, rather, a separate privilege based on the Revenue and Taxation Code specifically applicable to tax returns.

documents, explaining that they viewed the tax returns and related materials as "estate administration" documents rather than "estate planning" documents, and therefore believed that those items did not fall within the scope of plaintiff's request for production or the court's prior discovery orders. In addition, defendants again stated their position that even if the returns were an intended target of the production demand, the returns are privileged from disclosure, citing *Webb v. Standard Oil Co., supra,* 49 Cal.2d 509.

Plaintiff, in response, argued that the returns were encompassed by the request for production or the trial court's preceding disclosure orders, and that any claim of privilege was insupportable because "public policy" renders the protection afforded tax returns unavailable in this case. The public policy plaintiff was relying on was not described with any degree of precision. Rather, plaintiff stated: "In this instance, as previously briefed regarding the trust instruments and Wills, the California statutory scheme requires the filing of these instruments and therefore, there is no privilege. Therefore, the estate tax return is discoverable also." Neither the previous briefing nor the statutory filing requirements plaintiff referred to were identified; furthermore, plaintiff made no effort to explain why those "filing requirements," whatever they may be, support the conclusion that the tax return privilege is not available in this case.

Defendants, replying to plaintiff's points, acknowledged that the tax return privilege, as developed by *Webb* and its progeny, is not absolute, and is subject to exceptions in situations where disclosure is required to implement an overriding public policy. However, defendants countered, in this case no such public policy is threatened with abridgment should their claim of privilege be honored.

This brings us, finally, to the November 13 order which gives rise to the instant petition. The superior court first rejected defendants' contention that the tax returns were not encompassed within the previously ordered production "of any and all documents concerning estate planning mechanisms . . . ."[3] It then stated: "To the extent any such tax returns on their face relate to Carolee Hendrick [plaintiff] they, and any related documents necessary to understanding in context, must be produced unless protected by privilege." Regarding the privilege claim, the court concluded: "Setting aside the fact that no tax return privilege was timely asserted, the Court holds that the statutory provision requiring the filing of such statements is a reflection of the legislative will that, at least as to these litigants, the ordinarily applicable privilege yields to the litigant's entitlement to discovery for the above[-]described statements."

[3] Defendants have not renewed this argument in their petition to this court.

This order raises several interpretative problems for us as a reviewing court. Even if it may be understood to limit the required production to "any such tax returns" which "on their face relate to" plaintiff and "related documents necessary to understanding in context . . . ," it is unclear precisely which records defendants have been instructed to deliver, whether the order applies to only a portion of the tax returns as opposed to the entire documents, or, if production of the complete returns is not necessarily being directed, how the parts subject to disclosure are to be identified. Indeed, it could well be that none of the returns "on their face" relate to plaintiff, and therefore nothing is subject to the order. Nor can we discern exactly what basis the court had for concluding that defendants were dilatory in raising the tax return privilege, since the question of whether the specific privilege for tax returns had been timely asserted was not raised in any of the previous briefs or orders (although that issue was discussed in the course of litigating a separate dispute over defendants' claim of attorney/client, work product, and right to privacy protection for other discovery items). Finally, the order, like plaintiff's briefing, does not identify exactly what "statutory provision requiring the filing of such documents" is deemed indicative of a "legislative will" in favor of disclosure.

■ Notwithstanding these uncertainties, we shall follow the parties' lead and construe the court's order as requiring defendants to provide plaintiff with the federal and state estate tax returns in their entirety. We conclude that to the extent it is so intended, the order is an abuse of discretion, in that defendants did not waive the privilege, and no supervening public policy has been demonstrated.

■ Beginning with *Webb v. Standard Oil Co., supra,* 49 Cal.2d 509, a series of California Supreme Court and Court of Appeal decisions have considered the scope of various statutory provisions which prohibit the administrators and employees of state agencies responsible for the collection of taxes from disclosing information in tax returns. (See *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718-722 [21 Cal.Rptr.2d 200, 854 P.2d 1117] [corporate income tax and payroll tax returns]; *Webb v. Standard Oil Co., supra,* at p. 512 [income tax returns]; *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 6 [123 Cal.Rptr. 283, 538 P.2d 739] [sales tax returns]; *Crest Catering Co. v. Superior Court* (1965) 62 Cal.2d 274 [42 Cal.Rptr. 110, 398 P.2d 150] [employment tax returns].) In each of those cases, the respective statute has been held to establish an implied privilege against compelled disclosure in civil proceedings to which the taxpayer is a party. (*Schnabel v. Superior Court, supra,* at p. 719.) The rationale for this extension of the protection beyond the literal terms of the statutes was first articulated in *Webb v. Standard Oil Co., supra,* 49 Cal.2d at page 513, where

the court explained: "The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns." While no reported decisions have extended the privilege to estate tax returns, we see no reason not to do so. Revenue and Taxation Code section 13501 requires the personal representative of every estate to file a return with the California State Controller, along with a copy of any federal estate tax return. Section 14251 of that code provides, in part, that: "All information and records acquired by the Controller or any of his or her employees are confidential in nature, and except insofar as may be necessary for the enforcement of this part or as may be permitted by this article, shall not be disclosed by any of them." The statute goes on to state that any disclosure other than those permitted by law constitutes a felony punishable by a state prison term. This guarantee of confidentiality is quite similar to the statutes prohibiting agency officials from disclosing the contents of income and sales tax returns which were the subject of *Webb* and the subsequent cases cited above. "These equivalent statutes should be interpreted consistently, and the same privilege should apply." (*Schnabel v. Superior Court, supra,* 5 Cal.4th at p. 720.)

Plaintiff does not dispute the fundamental premise that estate tax returns are entitled to the same protections against disclosure in civil proceedings as are other types of returns. Implicitly conceding that point, she argues instead that the privilege is not available to defendants in this case for two reasons. First, she contends defendants waived the tax return privilege by failing to raise it in their initial objections to the notices of deposition and requests for production of documents, or at the depositions. Second, plaintiff argues there is an overriding public policy which supports the trial court's conclusion that disclosure is appropriate in this case. We do not find either of plaintiff's theories persuasive.

Plaintiff relies primarily on Code of Civil Procedure sections 2025, subdivision (m)(1), and 2031, subdivision (*l*), to support her claim of waiver. The former statute applies specifically to depositions, and provides: "The protection of information from discovery on the ground that it is privileged . . . is waived unless a specific objection to its disclosure is timely made during the deposition." The latter, governing requests for production of documents, states in pertinent part: "If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege . . . ." These requirements have been generally construed as meaning that if a party contends a demand for the production of documents is violative of a privilege, an objection on that ground, specifying the protected items and the

particular privilege alleged to apply, must be included in the initial response to a production request or deposition question, or may be deemed waived. (See *Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130, 1140-1141 [84 Cal.Rptr.2d 350]; *Scottsdale Ins. Co. v. Superior Court* (1997) 59 Cal.App.4th 263, 274 [69 Cal.Rptr.2d 112].) Invoking this general principle, plaintiff contends defendants "neglected to raise any objection on the basis of the tax return privilege at any stage until [they] desperately attempted to avoid production of the relevant documents after being compelled to do so by the trial court in October 2000."

Plaintiff's assertions are not, in our view, an accurate characterization of the events below. The allegation that defendants had been "compelled" by the trial court to produce the returns before they raised the privilege issue is doubtful, since neither the court's first order issued August 29, or its second order, issued on October 11 after additional briefing and argument, makes reference to the tax returns as a specific item to be produced. It is true that defendants' initial response to the notice of deposition and request for production of documents, served on April 10, 2000, did not include the tax return privilege as one of the designated grounds for objection. However, defendants, in their August 21 opposition to the motion to compel, filed prior to the August 29 hearing, pointed out that they had withheld the tax returns and related documents because they did not believe those items were encompassed within the terms of the request for production, and also noted that even if the request could be construed to do so, they considered the returns privileged. While the "privilege" claimed was somewhat inaccurately referred to as the right of privacy, defendants also cited *Webb v. Standard Oil Co., supra,* 49 Cal.2d 509, which should have put plaintiff on notice as to the true nature of the claimed protection. This position was reiterated in the "Joint Statement" filed September 29 after the first hearing on the motion to compel, and was more clearly spelled out in their "Supplemental Statement" of October 26, 2000.

Defendants' doubt as to whether the returns were being requested, and their failure for that reason to mention their objection in the initial response to plaintiff's discovery request, was, in our view, eminently reasonable. The category of documents in the request for production which plaintiff and the trial court have interpreted as including the returns was determined as: " 'ANY AND ALL WRITINGS,' regarding the estate planning of Roy Grant Deary, Jr., including, but not limited to, all wills, codicils, trusts and/or any other mechanism discussed and/or implemented regarding estate planning." It is certainly not obvious to us that this description should necessarily have been construed by the responding party as encompassing the tax returns filed by the estate after Deary's death, which presumably merely set forth the

assets and liabilities of the estate and calculate the taxes owed the state and federal governments. Indeed, plaintiff's position that the returns did in fact fall within the ambit of their demand was not articulated in any pleading until their own "Response to Defendants Supplemental Statement," which they filed on or about November 2, 2000. This despite the fact defendants had twice previously advised plaintiff of their reading of the original request, in response to which plaintiff made no effort to correct what she later claimed to be an erroneous interpretation. Thus, while plaintiff apparently believed from the outset that defendants' understanding of the production request was mistaken, she did nothing to disabuse defendants of that misapprehension until the last possible stage of discovery pleadings, foregoing without explanation several earlier opportunities to do so.

In our view, given the uncertainty reasonably engendered by the lack of precision in plaintiff's description of the records she desired, and plaintiff's own failure to specifically address the tax return issue when it was first raised, it cannot be said that defendants were late in asserting the privilege. If anything, defendants noted its applicability and their reliance on its protection even before the need to do so was apparent. Any delay was due in large part to the ambiguity of plaintiff's request for production, and we cannot penalize defendants for failing to make an objection for which a reasonable person would not have recognized the necessity. In such circumstances, to hold that the privilege was waived would be unreasonable. Furthermore, to do so would potentially encourage litigants to engage in discovery gamesmanship, using the device of advancing purposefully ambiguous production requests or questions calculated to elicit an incomplete response, and then claiming waiver when the "real" target of the request is finally revealed. For these reasons, we conclude that defendants' assertion of the tax return privilege was timely.

We also find unconvincing plaintiff's contention that the privilege is not available in this case because of an overriding public policy in favor of disclosure. As previously noted, the tax return privilege is not absolute, and may be lost where, for example, there is an intentional relinquishment, or the gravamen of the underlying action is inconsistent with the assertion of the privilege, or " 'a public policy greater than that of confidentiality of tax returns is involved . . . .' " (*Schnabel v. Superior Court, supra,* 5 Cal.4th at p. 721.) However, this exception is narrow, and only applies "when warranted by a legislatively declared public policy." (*Ibid.*) Plaintiff in this case has wholly failed to identify any such policy.

Plaintiff's argument in the trial court, and the lower court's order compelling disclosure, cite as evidence of such a public policy unspecified "filing

requirements." We may speculate that the requirements referred to are the provisions directing that Deary's trust and will be filed in the probate proceedings related to his estate, or the self-evident requirement that the returns themselves be filed with the Controller, but this is not clear from the record. Regardless, no reasons are proffered as to why these, or any other possible filing requirements, should be construed as evidence of a legislative intent to withdraw the privilege. We see no logical connection between the filing in probate court of the testamentary instruments, which as expressions of the decedent's wishes regarding distribution of his estate are intended by their very nature to be public, and the privilege accorded tax returns. To require the former is not obviously inconsistent with maintaining the latter. Furthermore, if plaintiff and the trial court have in mind the fact that the returns have been filed with the appropriate state and federal tax enforcement agencies, their argument borders on the absurd. Obviously, the very purpose of the legislatively created (and judicially expanded) bar against disclosure of returns is to encourage voluntary filing by assuring the taxpayer that doing so will *not* result in a loss of confidentiality. (See *Webb v. Standard Oil Co., supra,* 49 Cal.2d at p. 513.)

Plaintiff, in her written opposition to defendants' petition filed in this court, also cites, for the first time, two unrelated sets of statutes not previously mentioned by her or the trial court, as indicative of a superceding public policy. First, she points to several Evidence Code provisions which except from the attorney-client privilege communications by a now deceased client to counsel regarding the client's intent with regard to a "conveyance, will, or other writing." (Evid. Code, §§ 957, 960, 961.) We are at a loss to see how these exceptions, applicable to inter vivos communications to an attorney regarding writings which are intended for public disclosure by the person making the statements, somehow indicate a legislative policy in favor of revealing the contents of tax returns, which contain information compiled after the client's death by third persons for communication only to government officials. The logical leap inherent in plaintiff's argument is one we are unable to make.

In addition to these Evidence Code provisions, plaintiff asserts that Probate Code section 19000 et seq., which set forth the procedures for resolving creditors' claims against a trust established by a deceased trustee, somehow support her public policy argument. The connection between those provisions and the tax return privilege is, if anything, even more attenuated than is that with the attorney-client privilege exceptions, and we see no basis for reading them as somehow abrogating the confidentiality of the returns.

In sum, we conclude defendants' claim of privilege is well taken, and the order compelling disclosure of the estate tax returns constitutes an abuse of discretion by the superior court.

One additional matter requires our attention. In the trial court, defendants claimed the tax return privilege not only for the returns themselves, but also for "related" documents, including those used to prepare the returns. The trial court order requires disclosure of those related documents. In their petition to this court, while defendants repeat their expansive claim of privilege in conclusory fashion, they make no effort to identify the allegedly protected documents, or explain with legal argument and pertinent authority why the tax return privilege should be extended to those materials. We shall not engage in speculation as to which documents defendants have in mind. It may well be that some or all of the records in the tax return preparation file defendants seek to withhold are proper subjects of discovery notwithstanding the fact they are the source of background information used to prepare the returns. We cannot make such a determination in a vacuum, and therefore shall limit our comments noting that the relief we are granting in this opinion is limited to protecting the estate tax returns, and nothing else. This limitation on the scope of our relief is without prejudice to defendants seeking further consideration in the trial court consistent with the views expressed herein.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting plaintiff's (real party in interest) motion to compel production of the estate tax returns of the estate of Roy Grant Deary, Jr., issue a new order denying plaintiff's motion in that respect, and take any further action needed to implement the opinion we have rendered. Upon our decision herein becoming final, the stay we previously issued is vacated. Costs are awarded to defendants (petitioners).

Morrison, J., and Kolkey, J., concurred.