[No. D039959. Fourth Dist., Div. One. Sept. 20, 2002.]

PALOMBA WEINGARTEN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
POINTE SAN DIEGO RESIDENTIAL COMMUNITY et al., Real Parties
in Interest.

## COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard, R. Gaylord Smith, Alan E. Greenberg, Jeffrey A. Miller, Lisa Willhelm Cooney; Greenberg and Traurig and Vincent H. Chieffo for Petitioner.

No appearance for Respondent.

Niddrie & Hegemier, David A. Niddrie; Procopio, Cory, Hargreaves & Savitch, Steven M. Strauss, Frank L. Tobin and Paul A. Tyrell for Real Parties in Interest.

## OPINION

**HALLER, J.**—After the first phase of a trial in which the court found defendant Palomba Weingarten committed fraud and malice, the court ordered Weingarten to produce her 2000 and 2001 personal tax returns to

permit plaintiffs to prepare for the punitive damages phase. Weingarten seeks a writ of mandate directing the trial court to set aside its disclosure order, contending the order violates her privilege to maintain confidentiality of her tax returns. We deny the requested relief.

We agree with Weingarten that a finding a defendant is liable for punitive damages is insufficient, by itself, to establish the tax return privilege is inapplicable. But we conclude the trial court did not abuse its discretion in finding the privilege was inapplicable in this case because the record showed Weingarten engaged in conduct precluding plaintiffs from obtaining relevant nonprivileged financial information necessary to support plaintiffs' punitive damages claim, and there was no less intrusive alternative for plaintiffs to obtain the information. We modify the order only to include a provision requiring that Weingarten's husband, Robert Weingarten, receive notice and an opportunity to be heard before the court can compel disclosure of the joint tax returns.

### SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a complex business relationship that began in late 1995 when plaintiffs Pointe San Diego Residential Community and Gosnell Builders Corporation of California entered into transactions with Weingarten, and entities owned or controlled by Weingarten, relating to the potential development of residential property. After Weingarten engaged in conduct diminishing and/or eliminating plaintiffs' rights in the property, plaintiffs sued Weingarten and other entities, alleging breach of contract, intentional interference with contract, rescission, and breach of fiduciary duty. Plaintiffs sought compensatory and punitive damages, a constructive trust, and an accounting.

Approximately nine months before trial, the trial court directed Weingarten to identify all witnesses and documents regarding her "financial condition," presumably to permit plaintiffs to obtain necessary information in the event of a punitive damages finding. (See Civ. Code, § 3295, subd. (c).) In response, Weingarten produced an unverified December 2000 personal financial statement and some supporting account statements. However, at her deposition taken one month before trial, Weingarten acknowledged this financial statement was no longer accurate because all of her assets were "now tied up in this [residential development] project." Weingarten made no effort to produce additional information to explain this claimed change in her financial condition.

The court bifurcated the action, and, sitting without a jury, tried the equitable claims first. After a trial, the court found Weingarten breached her

fiduciary duties to plaintiffs in numerous ways, including by engaging in "inherently unfair" deals and intentionally acting to personally financially benefit herself to the detriment of plaintiffs. The court found Weingarten's conduct as a corporate director "involved the absence of good faith, the receipt of an improper personal benefit and showed a knowing reckless disregard for her duty to the corporations and/or its shareholder and resulting risk of serious injury." The court found plaintiffs failed to prove out-of-pocket losses with respect to several of the breaches of fiduciary duty, but found that plaintiffs did prove monetary losses with respect to Weingarten's improper receipt of commissions and the improper fees and costs charged to the project. The court ordered an accounting to determine the proper amount of damages and a constructive trust with respect to these breaches, expressing concern that Weingarten could once again engage in the improper transactions and commit "future abuses." The court further found by clear and convincing evidence that Weingarten was "guilty of 'malice' and 'fraud,'" and stated it would schedule a trial on the punitive damages amount after plaintiffs' counsel had sufficient opportunity to conduct financial discovery. (See *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 609 [92 Cal.Rptr.2d 897].)

Shortly thereafter, plaintiffs requested that the trial court sign an order requiring Weingarten to produce numerous specified financial documents to permit plaintiffs to meet their burden on the punitive damages issues. (See *Adams v. Murakami* (1991) 54 Cal.3d 105, 109-123 [284 Cal.Rptr. 318, 813 P.2d 1348].) The requested information consisted of standard financial discovery, including bank and investment statements, loan and other credit applications, real and personal property appraisals, real property descriptions, certificates of deposit, retirement plan documentation, and documents relating to stocks and other interests in various businesses. Plaintiffs also sought Weingarten's tax returns from 1998 until the present date. At a hearing, the court declined to issue an immediate order, and stated it would instead treat the proposed order as a discovery request.

Three weeks later, Weingarten served a response to plaintiffs' document requests in which she raised numerous objections and essentially refused to produce any additional documents relating to her financial circumstances, claiming she had already produced her full financial information. With respect to the request for tax returns, Weingarten objected on the "grounds of tax preparers and privacy privileges . . . ."

The next day, plaintiffs moved to compel production of the requested documents, arguing that Weingarten's response was inadequate. Plaintiffs explained they had the burden of proving Weingarten's "wealth and ability to pay," but Weingarten continued to possess "all of the [relevant] information . . . ." Plaintiffs claimed they had "tried repeatedly to obtain complete

and accurate financial records" but "[a]t every stage of this litigation, [Weingarten has] vigorously opposed those efforts and [has] provided incomplete, inaccurate and misleading financial documents."

Plaintiffs supported their motion with the declaration of Jeffrey Sumpter, a certified public accountant, whom they retained to provide an opinion on Weingarten's financial condition for purposes of determining the appropriate punitive damages amount. Sumpter stated the financial documents previously produced by Weingarten contained numerous "discrepancies" and raised substantial questions as to whether the information was complete. In particular, Sumpter stated that: (1) Weingarten excluded from her financial statement the current value of her residence, even though the residence appears to be a significant component of Weingarten's wealth; (2) Weingarten failed to provide the current value of her long-term investments and relevant supporting information; (3) Weingarten failed to explain a large downturn in the assets of her wholly owned corporation from 1999 to April 2002; (4) Weingarten's bank statement showed an unexplained "sizeable decline" from December 2001 to February 2002; (5) Weingarten failed to provide "reliable back up information regarding the values" she has assigned to her assets; and (6) Weingarten failed to explain her efforts to link "a significant amount of her net worth to the Pointe San Diego Residential project."

In opposing the motion, Weingarten did not specifically address the issues raised by Sumpter. She instead urged the court to deny plaintiffs' motion based on her assertions that she had "made a full and complete production of financial documents and financial statements" and that plaintiffs had no need for discovery beyond the financial statements. Weingarten further asserted her tax returns were privileged and urged the court to deny the motion because the request potentially violates the privacy rights of her husband, Robert Weingarten, with whom she files a joint tax return. She additionally stated she had made available numerous additional documents and requested the court to delay ruling on the motion until plaintiffs reviewed those documents.

After considering the papers and counsels' arguments, the court overruled Weingarten's objections to producing the tax returns, finding plaintiffs' interests "in assessing Ms. Weingarten's financial worth for purposes of the punitive damages phase of the trial outweighs Ms. Weingarten's tax privilege." But the court limited the required disclosure to the prior two years, and imposed a protective order permitting disclosure of the records only to plaintiffs' attorneys and necessary experts.

Weingarten filed this writ petition challenging the court's order with respect to the required production of her 2000 and 2001 personal tax returns.

## DISCUSSION

■ There is no recognized federal or state constitutional right to maintain the privacy of tax returns. (See *Couch v. United States* (1973) 409 U.S. 322, 336-337 [93 S.Ct. 611, 620, 34 L.Ed.2d 548]; *Deary v. Superior Court* (2001) 87 Cal.App.4th 1072, 1075, fn. 2, 1077-1078 [105 Cal.Rptr.2d 132].) California courts, however, have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718-721 [21 Cal.Rptr.2d 200, 854 P.2d 1117]; *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621].) The purpose of the privilege is to encourage voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection. (*Webb v. Standard Oil Co., supra,* 49 Cal.2d at p. 513.)

But this statutory tax return privilege is not absolute. The privilege will not be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved. (*Schnabel v. Superior Court, supra,* 5 Cal.4th at p. 721.) This latter exception is narrow and applies only "when warranted by a legislatively declared public policy." (*Ibid.*) A trial court has broad discretion in determining the applicability of a statutory privilege. (See *National Football League Properties, Inc. v. Superior Court* (1998) 65 Cal.App.4th 100, 106-107 [75 Cal.Rptr.2d 893].)

■ The trial court ordered Weingarten's tax returns disclosed based on the third exception, finding that a public policy "greater than confidentiality of the tax return [was] involved . . . ." Weingarten challenges this finding, asserting that although tax returns may be a useful source to establish a defendant's financial condition and thus to prove the proper punitive damage amount, the mere fact that her tax returns would be relevant to punitive damage issues does not warrant abrogating the privilege.

We agree with this general principle. ■ The public policies underlying the punitive damages statutes are to punish and deter wrongdoers. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 980 [105 Cal.Rptr.2d 88].) While these public policies are important and the need to prove the defendant's financial condition is essential to ensure an appropriate punitive damages amount (*Adams v. Murakami, supra,* 54 Cal.3d at p. 120), these policies are not necessarily greater than the significant public policy considerations underlying the need to maintain confidentiality of tax returns. Our Supreme Court has recognized the public's substantial interest in ensuring a

taxpayer will make full and truthful declarations in his or her return without fear the statements will be revealed or used against the taxpayer for other purposes. (*Webb v. Standard Oil Co., supra,* 49 Cal.2d at p. 513.) Thus, the fact that a complaint contains a punitive damages allegation or a fact finder has found a basis for imposing punitive damages does not, standing alone, constitute a basis for compelling the disclosure of tax return information.

██ However, this case does not present a simple balance between the public policies underlying the tax return privilege and the public policies supporting an appropriate punitive damages award. Instead, this case involves a trial court's discretionary authority to order the production of tax returns when a defendant who has been found to have acted with malice and fraud, has sole control of his or her financial records and is refusing to produce relevant nonprivileged documents.

In response to the trial court's pretrial order requiring Weingarten to identify relevant witnesses and documents pertaining to her financial condition, Weingarten produced only an unverified and incomplete financial statement. After the court found Weingarten liable for punitive damages, the court provided Weingarten a second chance to properly comply with plaintiffs' financial discovery by treating plaintiffs' proposed order as a document request. Had Weingarten complied in good faith and produced the type of conventional financial documents requested by plaintiffs, such as bank, investment, and real estate records, the compelled production of tax returns would not have been warranted. However, instead of producing these standard documents, Weingarten continued to refuse to produce any credible financial information and instead claimed she had already disclosed all information relevant to her current financial condition, relying on her admittedly outdated financial statement. By so acting, Weingarten intentionally interfered with plaintiffs' ability to obtain relevant information through legitimate means, and then sought to hide behind the tax return privilege to ensure no relevant information would be revealed to plaintiffs.

Weingarten's refusal to produce relevant financial information was not an isolated incident. The independent calendar trial judge, who was intimately familiar with the case and Weingarten's conduct during discovery, was aware that Weingarten had engaged in the same type of evasive and bad faith activities regarding her financial matters in the underlying case, and had repeated this conduct throughout the litigation by refusing to respond appropriately to discovery requests. For example, Weingarten refused plaintiffs' requests to inspect the corporate books and records, withheld significant information regarding sales in the residential development, asserted unsupported privilege claims in response to a document request, attempted to

evade and improperly limit her deposition, and refused to comply with a court-ordered accounting until plaintiffs filed a sanctions motion. Absent a valid objection, parties in a civil lawsuit are expected to comply with discovery requests and court orders compelling compliance. The trial court was aware that Weingarten repeatedly disregarded these fundamental principles, and acted as if she were exempt from discovery rules.

Although the public policy favoring the confidentiality of tax returns does not give way merely because the information is relevant to prove punitive damages, the balance changes when the defendant, without a valid basis, refuses to comply with legitimate discovery requests that seek nonprivileged financial information. Weingarten's conduct not only interfered with plaintiffs' ability to prove their case, but it also undermined the discovery process and the judicial system's ability to ensure an ordered process designed to uncover the truth. These policies, when considered together with the importance of obtaining financial condition evidence to establish a proper punitive damages amount, outweighed Weingarten's right to claim the tax return privilege as a basis to refuse to produce highly relevant evidence of her financial condition.

Our conclusion that the court acted within its discretion in ordering the disclosure is bolstered by two additional facts. First, the court's order was strictly limited as to time. Although plaintiffs sought tax returns for the prior five years, the court recognized that only Weingarten's current financial condition was at issue and therefore limited the disclosure to the prior two years. Second, the court issued a strict protective order limiting disclosure of the tax returns to only the attorneys and experts in this case. By so doing, the court ensured the intrusion into Weingarten's privacy would be no more than necessary to obtain the highly relevant information.

In reaching our conclusion the trial court did not abuse its discretion, we caution against compelled disclosure of personal tax returns except in those rare instances where the public policy underlying the tax privilege is outweighed by other compelling public policies or where waiver principles apply. The fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough. Likewise, standing alone, a finding of liability for punitive damages is insufficient. ▮ But disclosure may be ordered where a defendant has been found liable for punitive damages and the party requesting disclosure establishes (1) the defendant has refused to produce relevant nonprivileged financial records or has produced only meaningless and unreliable financial information in response to punitive

damage discovery; (2) the defendant has engaged in a pattern of improperly obstructing efforts to obtain financial records through means that do not implicate the privilege and it is reasonable to assume this pattern of conduct will continue; and (3) less intrusive methods to obtain the financial records have been unsuccessful. ▓▓ Although the trial court did not specifically articulate these factors, upon reviewing the entire record before us, we are satisfied the trial court found each of these factors existed before ordering production of the tax returns.

Weingarten contends the compelled disclosure was unnecessary in this case because she has since produced substantial additional information about her finances, "including bank statements, financial statements, statements from brokerage accounts as well as a description of her jewelry, works of art, books, long-play records, compact discs and golf clubs." Viewing the portions of the record relied upon by Weingarten, the argument is unsupported. The cited portions of the record show Weingarten provided some additional descriptions of specific items of personal property. However, there is no evidence in the record before us that Weingarten provided any additional documents or information about her financial condition, and, based on her written response to the document production, the record shows she remains unwilling to do so.[1]

We also reject Weingarten's argument that the tax returns do not contain relevant information because they are joint returns and she has no interest in her husband's "separate property." Even assuming the joint tax returns would not disclose which spouse owned which property, the argument fails because the trial court had ample basis to conclude the returns would at least contain information that would lead to the discovery of Weingarten's actual net worth. Moreover, the trial court had sufficient basis to conclude that at this stage of the litigation Weingarten failed to show she had no interest in her husband's property. The record shows the couple has been married for more than 40 years. Under California law, all property acquired by a married person during marriage is presumed to be community property, and a party claiming separate property has the burden of rebutting the presumption by clear and convincing evidence. (Fam. Code, § 760; *Gagan v. Gouyd* (1999) 73 Cal.App.4th 835, 843 [86 Cal.Rptr.2d 733].) In support of her claim that she had no interest in her husband's property, Weingarten relied solely on her deposition testimony, in which she stated that she and her husband

[1] At oral argument, Weingarten's counsel reemphasized that Weingarten has since produced numerous additional relevant financial documents, rendering the tax return information unnecessary. To the extent there are any changed circumstances that are relevant to the propriety of tax return disclosure, this is a matter for the trial court's consideration upon remand.

entered into an agreement during her marriage providing that she did not have an interest in her husband's assets. The court had a reasonable basis to reject this testimony and find that it was not credible, particularly because Weingarten failed to produce any written evidence of this claimed agreement.[2]

Weingarten additionally contends the trial court's order was improper because it violates the tax return privilege and privacy rights of her husband, Robert Weingarten, with whom she files joint tax returns. The trial court rejected this argument, finding it would be inappropriate for Weingarten to avoid disclosing the tax return merely because she filed a joint return.

■ A party to an action may assert the privacy rights of third parties. (See *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].) In such event, the third party has a right to notice and an opportunity to be heard. (*Id.* at p. 658.) ■ Thus, Robert Weingarten should have been formally notified of the proceedings and afforded a fair opportunity to assert his interests by objecting to the disclosure, proving up the identity of his separate property, or asserting possible alternative ways to protect his privacy rights. In ordering the documents produced, the court made clear that the order did not require the production of "any documents that relate solely to the separate property of Mr. Robert Weingarten." Thus, after providing notice and an opportunity to be heard to Mr. Weingarten, the court should examine the tax returns in chambers and redact any information that relates solely to Mr. Weingarten's separate property.

## DISPOSITION

Let a writ issue directing the superior court to modify its order compelling production of Palomba Weingarten's tax returns to provide Robert Weingarten notice and an opportunity to be heard to assert his own privacy objections to the disclosure of the joint tax returns. To the extent possible, the court should redact any references in the tax return to any property established to be Mr. Weingarten's sole and separate property. In all other

---

[2]After this court issued the order to show cause, Weingarten filed declarations of her husband and their attorney in an attempt to support her argument she has no interest in her husband's property. Because this information was not before the trial court at the time it entered the challenged order, the information is not properly before us. The factual issue as to the extent to which Weingarten has an interest in her husband's property is for the trial court to determine, and is not to be resolved as a matter of first impression by this court.

respects, the writ petition is denied. The parties to bear their own costs in this writ proceeding.

Benke, Acting P. J., and Huffman, J., concurred.

Petitioner's petition for review by the Supreme Court was denied November 26, 2002.