Filed 6/16/14  America Constructors, Inc. v. Super. Ct. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMERICA CONSTRUCTORS, INC., | No. B252555 |
| Petitioner, | (Super. Ct. No. BC485442) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| FEDERAL INSURANCE COMPANY, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Abraham Khan, Judge. Petition granted.

Hochfelsen & Kani, Steven I. Hochfelsen and David W. Kani for Petitioner.

No appearance for Respondent.

Anderson, McPharlin & Conners, David T. DiBiase and Henry S. Zangwill for Real Party in Interest.

_____

America Constructors, Inc. (petitioner) filed a petition for writ of mandate on November 19, 2013, after the superior court denied its motion to quash a subpoena seeking production of its tax returns. We stayed production of the tax returns and on January 8, 2014, issued an order to show cause to the Superior Court of Los Angeles County and ordered the stay to remain in force. Real party Federal Insurance Company (Federal) filed a return and petitioner filed a reply. We grant the petition.

*FACTUAL & PROCEDURAL BACKGROUND*

In May 2008, David Hamedany was the Director of Construction Management for Huntington Hospital in Pasadena (the Hospital). Hospital hired JCS as a general contractor for a construction project. In turn, JCS hired petitioner as a construction management company.

Jay Jamshasb and Nick Azartash were the owners of petitioner.

Hamedany subsequently admitted he received kickback payments from JCS, petitioner, Jamshasb and Azartash in exchange for awarding them contracts for the Hospital's construction project. Hamedany was charged with 12 counts of mail fraud in connection with these payments.

Corporate dissolution papers were filed for petitioner with the Secretary of State in January 2012.

Federal made payments to Hospital under a crime insurance policy for the fraud of Hamedany. In May 2012, Federal, in its capacity as subrogee and assignee of the Hospital, sued JCS, petitioner, Jamshasb and Azartash to recover payments it made to Hospital.

*Motion for protective order*

In July 2013, Federal served a notice of deposition and a subpoena on Afshin Maleki, the outside accountant for JCS and petitioner, requesting production of documents including financial statements, accounting statements, income tax returns and franchise tax returns of petitioner and JCS for the years 2008-2010.

Federal also noticed the deposition of Maryam Teimoori, who handled financial records for JCS and petitioner. Teimoori is the wife of Jamshasb.

2

Petitioner moved for a protective order in August 2013 seeking to preclude production of the tax returns of defendants and associated workpapers by Maleki. The motion challenged the discoverability of tax returns on the ground they were privileged and because the tax returns were not relevant to the case.

In Federal's opposition to the protective order, it asserted that the business records of petitioner would "expose the illegal scheme in which the other defendants were engaged." Federal submitted a declaration from Hamedany in which he stated that he received approximately $1.2 million in kickbacks based upon an agreement between him, Azartash, Jamshasb and John Haw, a lawyer and contract consultant. The payments were made by petitioner to Cyrus Engineering, Hamedany's corporation. Artzash told Hamedany that he and Jamshasb shared an interest in petitioner, which was affiliated with JCS, and that they preferred writing the checks on petitioner's account. Hamedany stated that after he had been sued for the kickbacks, he met with Azartash who presented him with a promissory note to sign. The note, backdated to 2008, was to be payable by Hamedany to Cyrus or petitioner to cover up the kickbacks. Hamedany has never been asked to pay the note. Hamedany was arrested in January 2011 and indicted on 12 counts of mail fraud in connection with his role in the kickback scheme. He also stipulated to judgment in a civil lawsuit against him.

Federal's attorney submitted a declaration stating that Jamshasb and Azartash testified in depositions that the payments were made under the guise of a loan from petitioner to Cyrus. They also testified that Cyrus performed no services for JCS or petitioner and admitted that the books and records of petitioner show the payments as a legitimate and tax deductible payment to a vendor. Federal also alleged that the dissolution of petitioner was deliberately concealed and Federal only learned of it after discovery had commenced.

The motion for protective order was heard on September 26, 2013. The superior court denied it, stating: "There is a qualified privilege to withhold disclosure of tax returns, which is subject to implied waiver. [Citations.] 'Only the tax return and information that is an "integral part" thereof is protected. The records and data upon

3

which the return is based (i.e., the party's checkbooks, journals and ledgers) are still subject to discovery.' . . . [¶¶] Finally, a motion for a protective order 'shall be accompanied by a meet and confer declaration. . . .'"

*Motion to Quash*

In September 2013, Federal served a deposition subpoena for production of business records upon Maleki, as custodian of records for JCS and petitioner, seeking, inter alia, income tax returns of petitioner for tax years 2008 through 2010, including all schedules, attachments and accountants' work papers.

Teimoori's deposition took place in October 2013.

In October 2013, petitioner, along with JCS, Jamshasb and Azartash filed a motion to quash the subpoena with respect to the tax returns and associated workpapers by Maleki.[1] The motion was based on the ground, inter alia, that the tax returns and associated worksheets of petitioner and JCS were privileged .

Federal filed an opposition and requested sanctions.[2] It argued that the motion to quash was simply a motion for reconsideration of the ruling on the motion for protective order. It argued in its opposition that the financial records requested "will expose the illegal kickback scheme in which they were engaged" and asserted the same grounds contained in their opposition to the motion for the protective order.

The motion to quash was heard on November 1, 2013. The court ruled, inter alia: "As for whether [petitioner], as a dissolved corporation, retains a tax return privilege, there is no California law on point. The purpose of the privilege—to encourage truthful tax returns—would not be supported, because a corporation's officers would have no fear

---

[1] An amended notice of motion to quash was filed stating the matter was based only on Code of Civil Procedure section 1987.1 and specifically citing the requests for tax returns.

[2] The sanctions were requested pursuant to Code of Civil Procedure sections 1008, subdivision (d), 1987.2 and 2023.030.

of tax return information being used against a dissolved corporation, because it no longer seeks to function or profit as a business."[3]

Petitioner contends in its petition that its tax returns are privileged even though it is a dissolved corporation. It also contends that because the underlying action involves no tax issues its tax returns are not relevant. The petition seeks relief only as to its tax returns and not those of JCS.

Federal alleges that the payments were made to Cyrus under the guise of a purported loan by petitioner, but the books and records of petitioner recorded the payments to Cyrus as a legitimate tax deductible payment. Federal contends "[t]he tax returns of JCS and petitioner, along with the financial records they turned over to their accountant, are necessary in order to obtain the evidence needed to expose the full nature and extent of these payments."

*DISCUSSION*

*1. Is there a privilege against disclosure of tax returns?*

In reviewing an order of a superior court granting discovery, we use the abuse of discretion standard of review. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186; *BP Alaska Exploration Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1249.) We first review the trial court's ruling that there is no California law on point.

In *Webb v. Standard Oil Co*. (1957) 49 Cal.2d 509, the California Supreme Court held that Revenue and Taxation Code section 19282 implicitly creates a privilege against the disclosure of income tax returns. That privilege applies to state as well as federal tax returns. (*Webb, supra*, 49 Cal.2d at pp. 513-514.)

The purpose of the privilege is "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statement will be revealed or used against him for other purposes. If the information can

---

[3]     There is no reporter's transcript of the proceedings. The court issued a tentative ruling and adopted it as its final ruling.

5

be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated. The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns." (*Webb, supra,* 49 Cal.2d at p. 513.)

There are three exceptions to the privilege: (1) if there has been a waiver; (2) if it is inconsistent with the gravamen of the lawsuit; and (3) if there is a public policy inconsistent with the privilege. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 721.)

*2. Is there a legislated public policy inconsistent with the privilege?*

Federal argued in its opposition to the motion for protective order (and motion to quash) that requiring production of the tax returns and financial records is necessary to further the public policy in Penal Code section 641.3, the commercial bribery statute.[4]

The trial court has discretionary authority to order production of tax returns in the rare instance where public policy against disclosure is outweighed by other compelling, legislatively-declared public policies. (*Schnabel v. Superior Court, supra,* 5 Cal.4th at p. 721; *Deary v. Superior Court* (2001) 87 Cal.App.4th 1072, 1080.)

Public policy favoring discovery in civil litigation is not a sufficient basis to outweigh the privilege. (*Fortunato v. Superior Court* (2003) 114 Cal.App.4th 475.) "The fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough." (*Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 276.)

---

[4]    Penal Code section 641.3 provides that commercial bribery is committed when "(a) Any employee who solicits, accepts, or agrees to accept money or anything of value from a person other than his, or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or anything of value under those circumstances, in guilty of commercial bribery."

In *Weingarten*, *supra*, 102 Cal.App.4th 268, the trial court weighed public policy against the necessity to maintain confidentiality of tax returns. It considered the policies of the judicial system's ability to ensure an ordered discovery process and the ability of a plaintiff to establish punitive damages and weighed them against the right to claim a tax return privilege. (*Id*. at p. 276.) The taxpayer in *Weingarten* repeatedly refused to produce relevant financial information in a business fraud case and did not comply in good faith with discovery requests. She intentionally interfered with plaintiff's ability to obtain relevant information through legitimate means and then "sought to hide behind the tax return privilege to ensure no relevant information would be revealed." (*Weingarten*, *supra*, 102 Cal.App.4th at p. 275.) The court of appeal held a trial court can properly consider whether: (1) the defendant refused to produce relevant financial records; (2) the defendant has engaged in a pattern of improperly obstructing efforts to obtain financial records and there is evidence the pattern will continue; and (3) less intrusive methods to obtain the financial records have been unsuccessful. (*Id*. at pp. 276-277.)

In *Deary v. Superior Court supra*, 87 Cal.App.4th 1072, litigants seeking damages from the estate of a decedent claimed their entitlement to discovery outweighed the privilege against disclosing the estate tax returns. (*Id*. at p. 1076.) The court of appeal found that plaintiffs had failed to identify a legislatively-declared public policy (*id*. at p. 1080) and found no evidence of a legislative intent to withdraw the privilege against disclosure. (*Id*. at p. 1081.) Accordingly, it ordered the trial court to vacate its order granting a motion to compel production of a tax return.

In order to prove commercial bribery, one would have to produce evidence that an employee of the Hospital, in this case Hamedany, received something of value from petitioner and Hamedany agreed to use his or her position for the benefit of petitioner. Here, Hamedany has admitted to receiving and negotiating kickbacks. He has been indicted on criminal charges and stipulated to a civil judgment.

It is clear that Penal Code section 641.3 embodies a public policy against bribery. But in this case, the party who seeks to assert this policy is an insurer, Federal, standing in the shoes of its subrogor, the Hospital, to recover payments from a corporation which

7

allegedly participated in a scheme to bribe a Hospital employee. This is, in effect, a civil claim of bribery. But even a policy against the commission of crimes (which would be implicit in all criminal statutes) would not necessarily mandate the disclosure of tax returns.

Federal contends the trial court found in its ruling that a public policy outweighed petitioner's interest in keeping its tax returns confidential. The ruling does not contain this finding. It only identifies the exceptions to the privilege but concludes that there is no case law as to whether the privilege may be asserted on behalf of a dissolved corporation. Federal must identify with specificity a legislative intent to abrogate the confidentiality of tax returns (*Deary, supra*, 87 Cal.App.4th at p. 1080) and the trial court must then determine if that policy outweighs the tax return privilege.

Moreover, bribery would not necessarily be proved by a tax return. The offering of a bribe might not be apparent from a tax return designation. In addition, Jamshab and Artazash already admitted the payments were characterized as tax deductible payments. The fact that the tax returns might be "helpful, enlightening or the most efficient way" to prove the bribery is not enough. (*Weingarten, supra*, 102 Cal.App.4th at p. 276.)

Therefore, once Federal explains how the legislatively-declared public policy it relies on in section 641.3 supports the disclosure of the tax returns in the circumstances of this case, the trial court needs to determine whether that policy outweighs the policy favoring confidentiality of the tax returns. (*Deary, supra*, 87 Cal.App.4th 1072 at pp. 1080-1081, *see Weingarten, supra*, 102 Cal.App.4th at p. 274.)

In addition the court may consider whether there are other discovery methods available to Federal to ascertain the information it needs. (*Sammut v. Sammut* (1980) 103 Cal.App.3d 557, 562.) But if Federal has attempted to obtain the information through other means and petitioner has refused to comply with legitimate discovery requests, the balancing of the factors changes. (*Weingarten, supra*, 102 Cal.App.4th at p. 275.) If petitioner's conduct is found to have undermined the discovery process then the judicial system's ability to ensure an orderly process to uncover the truth may also be weighed against the policy favoring confidentiality of tax returns. (*Id.* at p. 276.)

8

*3. Is the privilege consistent with the gravamen of the lawsuit?*

According to Federal, the purpose of the lawsuit is to discover what illegal payments petitioner made to Cyrus, which in turn made payments to Hamedany. But there is no copy of the complaint contained in the record nor any other indication of a specific reason why Federal needs petitioner's tax returns. Checks from petitioner to Cyrus were produced and Hamedany admitted to receiving the payments. Jamshasb and Artazash already admitted that Cyrus was not a vendor. The tax returns would only show how the payments were characterized for tax purposes.

Federal does not have an "automatic right to unfettered access to books and records" regarding the corporation's overall business operation. (*Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260, 1288.) Federal must indicate how the characterization of payments on petitioner's tax returns demonstrate it committed bribery, why it needs to see petitioner's entire tax returns, and why it cannot prove its allegations without petitioner's tax returns. Once it has done this, the trial court can make a determination as to how burdensome it will be for Federal to attempt to establish the essential elements of its lawsuit without information from petitioner's tax returns and whether any defenses asserted by petitioner compel the conclusion that it has waived the privilege. (See *Fremont Indemnity Co. v. Superior Court* (1982) 137 Cal.App.3d 554, 558; *Wilson v. Superior Court* (1976) 63 Cal.App.3d 825, 230.)

*4. Was there a waiver of privacy rights?*

Waiver must be established with a clear showing of an intentional relinquishment of a known right. *(DRG/Beverly Hills v. Chopstix* (1994) 30 Cal.App.4th 59, 60.)

Federal argues that any assertion of the privilege was waived due to the provision in the Master Agreement which provides that the contractor, JCS, would produce financial records in case of an audit. This provision does not include tax returns. Petitioner did not sign the Master Agreement, only JCS did.

The trial court must therefore determine whether there was intentional relinquishment by petitioner of the privilege against disclosing its tax returns.

9

*5. May a dissolved corporation assert the privilege as to its tax returns?*

The privilege afforded to personal tax returns also applies to corporate tax returns. (*Schnabel v. Superior Court, supra*, 5 Cal.4th at p. 720; *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 7.)

In this case, the superior court refused to apply the privilege because it found no case law specifically extending it to dissolved corporations. We also have found no cases addressing this issue. We therefore examine the nature of a corporate dissolution.

"A California corporation may dissolve by following the procedure set forth in the Corporations Code. After it has dissolved, a corporation, although no longer permitted to do business as a going concern, continues to exist for purposes of winding up its affairs and, in particular, for discharging obligations and defending lawsuits." (*Penasquitos Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1183.)

Corporations Code section 2010 provides that "A corporation which is dissolved nevertheless continues to exist for the purpose of . . . prosecuting and defending actions by or against it." While on its face, Corporations Code section 2010 draws no distinction between pre- and post-dissolution claims, the California Supreme Court concluded that Corporations Code section 2010 permits the assertion of post-dissolution claims against dissolved corporations. (*Penasquitos Inc. v. Superior Court, supra,* 53 Cal.3d at pp. 1188-1190.)

"Under our statutory scheme, the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity. . . . Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." (*Penasquitos Inc. v. Superior Court, supra,* 53 Cal.3d at p. 1190.)

"The shareholders of a dissolved corporation do not cease to exist as shareholders, nor do they lose all interest in, or responsibility for, the affairs of the corporation upon dissolution." (*Favila v. Katten Muchin Rosenman* (2010) 188 Cal.App.4th 189, 213.) "The board of directors and officers of the dissolved corporation have the authority to act on the corporation's behalf to wind up its affairs. (See Corp. Code, [§] 1903, subd. (b) . . . ." (*Ibid.*)

10

Petitioner, therefore, did not cease to exist upon the filing of dissolution papers. It continued to exist for purposes of litigation and winding up its affairs.

*a. Suspended corporations*

We also look to the rules regarding suspended corporations to see if they offer any guidance. Revenue and Taxation Code section 23301 provides that a corporation 's powers, rights and privileges may be suspended if it fails to pay any tax, penalty or interest due to the Franchise Tax Board.

A suspended corporation continues to have some corporate existence and there are distinctions between a suspended corporation and a dissolved corporation. (*Boyer v. Jones* (2001) 88 Cal.App.4th 220, 224; Corp. Code, §§ 2205, 1801; Rev. & Tax. Code, §§ 23301, 23305.) A suspended corporation is disqualified from exercising any right, power or privilege except for filing an application for tax-exempt status or amending the articles of incorporation to change a corporate name. (Rev. & Tax. Code, § 23301; *Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1365.)

The purpose of Revenue and Taxation Code section 23301 is to put pressure on the delinquent corporation to pay its taxes by prohibiting the delinquent corporation from enjoying the ordinary privileges of a going concern. (*Cal-Western Business Services Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310; *Timberline, Inc. v. Jaisinghani, supra*, 54 Cal.App.4th at p. 1366.)

Unlike dissolved corporations, suspended corporations may not defend themselves in litigation.

During the period of suspension for failure to pay taxes, it may not prosecute or defend an action, appeal from an adverse judgment, seek a writ of mandate or renew a judgment obtained prior to suspension. (*Cal-Western Business Services Inc. v. Corning Capital Group, supra,* 221 Cal.App.4th at p. 310.) The suspended corporation may remedy those deficits and then apply for a certificate of revivor. (Corp. Code, § 2205, subd. (d); Rev. & Tax. Code, § 23305.) Because of this distinction, cases on suspended corporations do not aid us.

*b. The attorney-client privilege may be asserted by a dissolved corporation*

Although there are no California cases on whether a dissolved corporation can assert the tax return privilege, there are cases which hold that a dissolved corporation may assert an attorney-client privilege.

"It is only logical that if a dissolved corporation continues to exist for litigation, it remains the holder of the attorney-client privilege during the litigation. A dissolved corporation would be at just as great a disadvantage as an active corporation by having to disclose confidential communications with its outside counsel. Moreover, the status of a corporation does not affect corporate counsel's inability to adequately defend himself or herself against malpractice and related claims in a shareholder derivative suit absent the corporation's waiver of the privilege." (*Reilly v. Greenwald* (2011) 196 Cal.App.4th 891, 902.)

"[A] dissolved corporation continues to exist for various purposes. Because it continues in existence . . . it would appear the persons authorized to act on the dissolved corporation's behalf during the windup process – its ongoing management personnel – should be able to assert the privilege, at least until all matters involving the company have been fully resolved and no further proceedings are contemplated. [Citations.] Indeed, if the lawyer-client privilege is simply extinguished upon dissolution, then the corporation's ability to effectively prosecute or defend actions is eviscerated; and the shareholders who may be responsible for their pro rata portions of any claims are unfairly disadvantaged." (*Favila v. Katten Muchin Rosenman, supra,* 188 Cal.App.4th at pp. 219-220.)

Using the same logic, a dissolved corporation should also be entitled to assert the tax return privilege.

Because a corporation can still be sued after its dissolution, it still has an interest in protecting private financial data contained in its tax returns. "Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists. Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances." (*Ameri-*

12

*Medical Corp. v. Workers' Comp. Appeals Bd., supra,* 42 Cal.App.4th at pp. 1287-1288.) Here, petitioner is defending itself against a lawsuit by Federal. Information in its tax returns could be used against it, not only in this lawsuit but in others. In order to protect itself, it should be able to assert the tax return privilege.

6. *Who may assert the privilege on behalf of the dissolved corporation?*

We next determine who may assert the privilege against disclosure on behalf of petitioner. Federal claims in its opposition that because petitioner is dissolved, there is no existing entity that has standing to assert the privilege on its behalf.

Within the context of the attorney-client privilege, a corporation may assert the privilege through an officer or director. (*Melendrez v. Superior Court* (2013) 215 Cal.App.4th 1343, 1354.) When the corporation is dissolved, its management personnel should be able to assert the privilege during the wind up process. (*Ibid.*) "However, if the corporation 'is no longer in existence,' the privilege is held by a 'successor, assign, trustee in dissolution, or any similar representative.'" (*Ibid.,* citing Evid. Code § 953, subd. (d).) Because the corporate affairs of petitioner have not been fully resolved, it would appear in this instance that corporate officers Jamshasb and Azartash can assert the privilege against disclosing petitioner's tax returns.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's motion to quash with respect to its tax returns and to conduct a new hearing. The trial court must determine whether Federal has identified a legislatively-declared public policy which outweighs the privilege against disclosure of tax returns; whether petitioner intentionally relinquished the privilege against disclosure of tax returns; what information Federal needs to establish the essential elements of its lawsuit; whether there are any other discovery tools available to Federal to ascertain the information it needs; whether petitioner has refused to comply with legitimate discovery requests; and whether the assertion of the privilege is inconsistent with any defenses asserted by petitioner. The stay issued November 20, 2013, shall be vacated when the opinion of this court becomes final.

13

Petitioner shall recover its costs in this proceeding.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.