[No. G003103. Fourth Dist., Div. Three. Dec. 4, 1985.]

THOMAS B., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
SHERRY H. et al., Real Parties in Interest.

**COUNSEL**

Frederick E. Turner, Donald Bartell and Ronald S. Cooper for Petitioner.

No appearance for Respondent.

Michel D. Maddy for Real Parties in Interest.

**OPINION**

**SONENSHINE, J.**—In this original proceeding we determine the right to discover an alleged father's state income tax returns for purposes of awarding child support in an action to establish parentage. We conclude such discovery must be deferred until parentage is ascertained. Civil Code sections 4700.7 and 4721, subdivision (d),[1] requiring parents to produce tax returns for this purpose, do not apply until the issue of paternity is finally adjudicated. We further hold other financial information need not be divulged for purposes of awarding *pendente lite* support until after a prima facie showing of paternity has been made, and thereafter, not until parentage is conclusively established.

I.

On July 16, 1984, Sherry H. instituted an action against Thomas B. The complaint alleges Thomas is the father of her daughter, Elizabeth LaVonne, born June 3, 1984, and seeks an adjudication of the issue (§ 7006, subd. (c)) as well as an order for child support.

Sherry also filed an order to show cause (OSC) for interim support. She served Thomas with a request for production of documents seeking, among

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

other things,[2] his 1983 federal and state income tax returns. After Thomas objected (on grounds not disclosed by the record), Sherry filed a motion to compel production. On December 28 the court ordered Thomas to produce his 1983 state income tax return at the upcoming OSC hearing and, on a date prior to the hearing, all other documents requested.

Sherry's OSC was ultimately heard in February 1985. Prior to the hearing Thomas had submitted to blood tests which indicated a 99.94 percent probability of paternity. The court found he was the child's father and ordered him to pay monthly support of $500. Both orders were made "without prejudice at trial." The court's written findings indicate Thomas' 1983 state income tax return and March 1984 personal financial statement, were produced at the hearing.

In May 1985 Sherry served Thomas with another request for production of documents. This time she sought federal and state income tax returns, both individual and corporate, for the years 1980 through 1984 as well as numerous other financial records dating back to 1980. In his response, Thomas objected on the grounds the requests were oppressive, burdensome, overly broad, and not calculated to lead to the discovery of admissible evidence "in that said documents can have no bearing upon [his] ability to pay child support at some point in the future." He also claimed some of the items sought had been requested the previous year. Sherry filed a motion to compel production, to which Thomas raised three objections pertaining to the tax returns: (1) federal income tax returns are privileged; (2) state income tax returns are protected against disclosure by the constitutional right to privacy; and (3) section 4721, subdivision (d), applies only to parents, not putative parents. He also reiterated several of the objections made in his response. According to the notice of ruling,[3] Thomas was ordered to produce, at the office of Sherry's counsel, his 1983 and 1984 individual and corporate state income tax returns; individual and corporate bank statements for 1983 and 1984; individual and corporate financial statements for 1980 through 1984; journals of the corporation's cash receipts and cash disbursements for 1980 through April 30, 1985; and accounting records relating to all real estate rental properties in which Thomas had either a direct or indirect financial interest from 1980 through April 30, 1985. The court also

---

[2]Also requested were monthly statements for any checking account in which Thomas was a signatory for the period June 1, 1983, through September 12, 1984; all savings account passbooks showing amounts on deposit in any account standing in his name for each month during the period June 1, 1983, through September 12, 1984; all statements for any stock brokerage business showing amounts on deposit for each month from June 1, 1983, through September 12, 1984; and all financial statements for himself or any business in which he had an interest for the period January 1, 1983, through September 12, 1984.

[3]The record does not include the court's formal order, if any.

assessed sanctions against Thomas in the sum of $500. (Code Civ. Proc., § 2034, subd. (a).)

Thomas' writ petition followed, and we issued a stay precluding document production pending resolution on the merits. Trial was thereafter continued at Thomas' request; however, the court denied his motion to bifurcate the issue of paternity from that of child support.

■ Ordinarily, the prerogative writ is not a favored method of obtaining review of discovery orders. (*Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739].) But an exception is made when the petitioner asserts a claim of privilege. (*Ibid.*) Accordingly, we review Thomas' claim his state income tax returns are privileged and not subject to disclosure until a final adjudication of paternity is rendered. And, while we might not otherwise consider his additional argument the court abused its discretion in ordering production of certain other financial records, we do so at the same time.

II.

The privilege against disclosure of state income tax returns was recognized by our Supreme Court in *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621]. There, the court held sections 19282 and 19283 of the Revenue and Taxation Code[4] rendered state income tax returns privileged because "[t]he wording of the . . . sections discloses an intent to preserve the secrecy of the returns . . . ." (*Id.*, at p. 512.) The court noted: "The purpose of . . . the statutory provisions prohibiting disclosure is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes. If the information can be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated." (*Id.*, at p. 513.)

This judicially created privilege is not, however, absolute. In the context of proceedings to enforce child support obligations, for example, it has been found to be inapplicable. (*Miller* v. *Superior Court* (1977) 71 Cal.App.3d 145, 149 [139 Cal.Rptr. 521]; cf. *Sammut* v. *Sammut* (1980) 103 Cal.App.3d 557, 561-562 [163 Cal.Rptr. 193] and *In re Marriage of Brown* (1979) 99 Cal.App.3d 702, 709 [160 Cal.Rptr. 524].)

---

[4]Section 19282 has since been amended without substantial change; section 19283 has been repealed.

And recently the Legislature carved two further exceptions. In 1983, section 4700.7[5] was enacted, mandating the submission of state income tax returns *to the court* by any party to a proceeding involving child or spousal support. This provision was followed in 1984 by section 4721, subdivision (d),[6] part of the Agnos Child Support Standards Act. Pursuant to *this* section, parents' state income tax returns for the previous two years are subject to discovery for the stated purposes of "verifying total gross income and amounts allowed for deductions."

The court apparently relied on section 4721, subdivision (d), in ordering Thomas to produce his 1983 and 1984 returns. Thomas contends the statute was intended to apply only to "parents" and is therefore inapplicable to him *until* the parent-child relationship is conclusively established. We agree.

The purpose of the Act is to "promote equitable, adequate child support awards." (§ 4720, subd. (a).) The Legislature recognized that "[i]n situations where a *parent* fails to meet his or her child support obligations, or where the award levels are inadequate, the state may ultimately be required to bear the financial responsibility for the child." (§ 4720, subd. (c).) Thus, it was intended "that a system of standards and procedures . . . be established which provide for a uniform determination of child support awards throughout the state, and which assures that, dependent upon the financial ability of each *parent* to do so, no child receives a support award less than would otherwise be established as the need for that child under the [Aid to Families with Dependent Children][7] program." (§ 4720, subd. (d), italics added.) To that end, the Legislature mandated the production of tax returns as a tool for "determining the ability of *parents* to pay the mandatory minimum child support award and to calculate the actual monthly payments to be made by each *parent* . . . ." (§ 4721, italics added.) In so doing, the Legislature apparently reasoned one's privacy interests in his or her income tax returns is outweighed by California's compelling interest in assuring to

---

[5]Section 4700.7, effective July 1, 1984, provides: "In any proceeding involving child support or spousal support, no party thereto may refuse to submit copies of his or her state income tax returns to the court, whether individual or joint."

[6]Section 4721, effective July 1, 1985, provides, in pertinent part: "In determining the ability of parents to pay the mandatory minimum child support award and to calculate the actual monthly payments to be made by each parent, all of the following provisions shall apply: . . . . (d) For the purposes of verifying total gross income and amounts allowed for deductions, copies of the parents' state income tax returns for the previous two years, copies of present wage stubs, and any other relevant documents shall be subject to discovery by the parties. Further, the court may require copies of the parents' tax returns for the previous two years, copies of present wage stubs, and such other documentation as it may deem necessary, including a current income and expense declaration in the form prescribed by the Judicial Council for family law matters."

[7]See Welfare and Institutions Code section 11200 et seq.

children of this state adequate levels of support. However, the scales do not tip in favor of disclosure until the case is ripe for that determination, i.e., until the right to a permanent support award founded on the existence of the parent-child relationship is ascertained.

The obligation of child support in a parentage action is governed by section 7010. Pursuant to subdivision (c), the judgment or order determining the existence or nonexistence of the parent-child relationship "may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support . . . ." Subdivision (d) provides: "In determining the amount to be paid by a *parent* for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts." (Italics added.)

The basic duty of support is set forth in section 242.[8] This section specifically provides the duty imposed is subject to the provisions of sections 4700.7 and 4721. Thus, disclosure of state income tax returns is mandatory in *all* child support proceedings *including* those brought under the Uniform Parentage Act. (§ 7000 et seq.) But this is not true until parentage is established; only then are the provisions of section 242 applicable. Section 7010 itself makes no reference to section 4721 nor to any other provision of the Family Law Act pertaining to support of children (Title 5 of the Civil Code). The Legislature did not intend to require disclosure of tax returns *before* parentage is conclusively established.

Sherry contends section 4721, subdivision (d), *is* applicable because Thomas has *already* been adjudicated a parent. She is wrong. ■ While proof of parentage is a jurisdictional prerequisite for an award of interim support, it is not res judicata for purposes of trial. (*Carbone* v. *Superior Court* (1941) 18 Cal.2d 768, 771 [117 P.2d 872, 136 A.L.R. 1260].) ■ It follows the court's finding of paternity for this limited purpose is not tantamount to a finding of paternity for purposes of sections 4700.7 and 4721, subdivision (d). Simply stated, no rational purpose is served by requiring a putative parent ■ to disclose the contents of his tax return before disclosure is essential. ■ "Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution. . . ." (*Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313,

[8]Section 242, effective July 1, 1985, provides: "Every individual shall support his or her spouse and child, and shall support his or her parent when in need. The duty imposed by this section shall be subject to the provisions of Chapter 2 (commencing with Section 4720) of Title 5 of Part 5 of Division 4 and Sections 196, 206, 246, 4700, 4700.1, 4700.5, 4700.7, 4700.9, 4801, 5131, and 5132." Reference to sections 4700.1, 4700.5, 4700.7 and 4700.9 was added by Stats. 1983, ch. 1304, § 2, effective July 1, 1984; reference to section 4720 et seq. was added as part of the Agnos Child Support Standards Act.

315 [187 Cal.Rptr. 4].) "Where 'fundamental rights' are involved, 'regulation limiting these rights may be justified only by a "compelling state interest," ' and 'legislative enactments must be narrowly drawn to express only the legitimate state interests at stake.' *Roe* v. *Wade,* 410 U.S. [113] at 155, 93 S.Ct. at 728." (*Caesar* v. *Mountanos* (9th Cir. 1976) 542 F.2d 1064, 1069, cert. den. (1977) 430 U.S. 954 [51 L.Ed.2d 804, 97 S.Ct. 1598].) Until such time as parentage is conclusively established, the policy favoring confidentiality of tax returns must prevail.

Nor is there any merit to Sherry's contention the paternity trial will involve issues of paternity *and* child support and is therefore a "proceeding involving child support" within the meaning of section 4700.7. That section mandates submission of state income tax returns *to the court.* It says nothing about tax returns being subject to discovery by the parties.[9] And while Thomas already produced his 1983 return at the OSC hearing, presumably pursuant to this section,[10] he was *ordered* to do so. Thus, he did not, as Sherry contends, waive the privilege. (See *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 343 [107 Cal.Rptr. 309, 508 P.2d 309].)

### III.

 The trial court has wide latitude in determining what is discoverable. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 380 [15 Cal.Rptr. 90, 364 P.2d 266].) This discretion is not, however, unlimited, and a reviewing court will grant relief where there has been an abuse. (*Ibid.*)

 Thomas contends the court abused its discretion in two respects. First, he claims he should not be required to produce records concerning property in which he has only an indirect financial interest and which are not in his possession, custody or control. But he has misconstrued the request. This category does not, as he contends, include "properties of competitors in nearby or similar areas," or those of suppliers or friends. Rather, the request was apparently intended to require production of records pertaining to property he *owns.* In this regard, information with respect to indirect ownership interests is just as relevant as that pertaining to direct ownership interests. Further, he argues even if he were able to compile a "list of indirect interests," he would be faced with the task of obtaining those parties' records. But the order does not and indeed could not require production of records pertaining to direct *or* indirect ownership interests

---

[9] Section 4700.7 has, however, been amended, effective January 1, 1986, to provide "[t]he tax returns may be examined by the other party and are discoverable by the other party." (Stats. 1985, ch. 303.)

[10] Indeed, section 4721, subdivision (d), was not then in effect.

which are inaccessible to him. (Code Civ. Proc., § 2031, subd. (a).) This portion of the court's order was proper.

Next, Thomas argues the court abused its discretion in ordering production of financial records dating back more than five years. He claims "antiquated financial records cannot be considered to have any relevant impact in determining a party's present ability to pay child support." We agree.

In support of her motion to compel production, Sherry submitted a declaration of her accountant setting forth reasons why the requested documents were needed. These included: confirmation of income and deductions declared in the tax returns; identification of other sources of income available; and preparation of a cash flow analysis. The declaration failed, however, to substantiate the need for five years worth of data. ■ We realize a reviewing court may not substitute its opinion for that of the trial court where there *is* evidence to support an argument made below. (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 438 [15 Cal.Rptr. 132, 364 P.2d 308].) "But if there is no legal justification for such exercise of discretion it must be held that an abuse occurred." (*Ibid.*) Not only is the accountant's declaration insufficient to warrant production of financial statements and bank records dating back to 1980, but also, only *two* years of tax returns were ordered produced. The trial court should have similarly limited production of the other records.

## IV.

■ The question of the applicability of sections 4700.7 and 4721, subdivision (d), to pendente lite support hearings is not directly before us. However, because Thomas was required to produce his 1983 return at the OSC hearing, we must comment on the propriety of that order.

Section 1 of Senate Bill No. 1213, pursuant to which section 4700.7 was promulgated, provides: "The Legislature hereby finds and declares that: [¶] (a) The State of California has no single standard to promote equitable, adequate child support awards. [¶] (b) If a *parent* fails to meet his or her support obligations, or if the amount of the award is inadequate, the state may ultimately be forced to bear the financial responsibility for the child. [¶] (c) The courts generally do not take into consideration or make adjustments for inflation and the greater costs of raising minor children as they increase in age." (Stats. 1983, ch. 1304; italics added.) Subdivision (b) is indicative of the Legislature's intent to preclude the state from bearing the financial burden of inadequate child support awards. Interim support, however, is only temporary and therefore bears little relationship to this legislative objective. Similarly, the purpose of section 4721, subdivision (d),

i.e., to provide the court with data sufficient for a determination of a parent's ability to pay the mandatory minimum levels of child support, has no relevance to an award of limited duration.

Thus, mandatory disclosure is not required under *either* section for the purpose of making a temporary support award.[11] It would be an anomaly to require a party to disclose at an OSC hearing confidential information which may not be discoverable for purposes of trial.

Until now, production of financial records at both pendente lite support hearings and paternity trials has been governed by ordinary rules of civil discovery. Because issues of paternity and support are generally determined in the same proceeding, putative fathers have been required to lay bare their financial affairs even if filiation was not ultimately proven. The enactment of sections 4700.7 and 4721, subdivision (d), prompts us to recognize the need to impose certain restrictions on this procedure. We understand the public policy underlying a mother's right to obtain evidence of the alleged father's ability to pay support. The needs of the child are of utmost concern. However, the opportunity for abuse is great, and the right to obtain such information must be tempered accordingly. We therefore conclude *no* financial records are discoverable for purposes of awarding interim support until after a prima facie showing of paternity is made. ■ Similarly, while the *extent* to which an alleged father's financial records are discoverable is within the court's discretion, the *time* for producing these records must await final adjudication of paternity.[12] Thus, an action to establish parentage is essentially comprised of four component parts: a prima facie showing of paternity for purposes of pendente lite support; a determination of an appropriate temporary award; the final adjudication of paternity; and a determination of permanent support (subject, of course, to subsequent modification upon a showing of changed circumstances). Each must be determined at a *separate* hearing.

The effect of our holding is to require the trial court to bifurcate the issue of paternity (both prima facie and final adjudications) from that of support.[13] Although Thomas' bifurcation motion was denied and the parties anticipate both issues will be litigated at the *same* trial, Thomas need not produce *any*

[11]This, of course, does not apply to pendente lite support orders rendered at proceedings brought under the Family Law Act. In those proceedings parentage is not at issue.

[12]Obviously, records produced subsequent to the first determination will remain in the possession of the requesting party. But they may not be used for any purpose until after a final adjudication of paternity is ultimately rendered.

[13]Prior to the enactment of sections 4700.7 and 4721, subdivision (d), it might have been appropriate to resolve issues of paternity and child support in a single judgment. (§ 7010, subd. (c).) Now, however, as this opinion illustrates, there is justification for litigating the issues independently. The Legislature may wish to amend section 7010 to so provide.

documents until paternity is finally determined. If Sherry is successful at the first phase of the proceeding, the trial must be continued to provide her ample time to review Thomas' records, including his tax returns.

We have reached our conclusion after full briefing by the parties. The result is clear. Issuance of an alternative writ would add nothing to our review and only further delay the proceedings. A peremptory writ in the first instance is appropriate. (Code Civ. Proc., § 1088; see also *Palma v. U. S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].) Moreover, in light of our holding, we conclude the trial court abused its discretion in assessing sanctions.

Let a peremptory writ of mandate issue directing the Orange County Superior Court to vacate its order granting Sherry's motion to compel production of documents and awarding sanctions, and enter a new order denying the motion. Any further discovery of Thomas' financial records should be conducted in accordance with the views expressed herein. The stay previously issued is vacated. This opinion shall be deemed final forthwith. (Cal. Rules of Court, rule 24(c).)

Trotter, P. J., and Wallin, J., concurred.