[No. B169892. Second Dist., Div. Four. Dec. 17, 2003.]

ANTHONY M. FORTUNATO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ILENE FORTUNATO INGRASSIA and STEWART FORTUNATO, Real
Parties in Interest.

## COUNSEL

Smith, Chapman & Campbell, Steven C. Smith, Dharma R. Naik and Stephanie P. Alexander for Petitioner.

No appearance for Respondent.

Nicole M. Catanzarite and Kenneth J. Catanzarite for Real Parties in Interest.

---

OPINION

HASTINGS, J.—

## BACKGROUND

Decedent, Robert Fortunato, died on November 4, 2002. On February 7, 2003, his daughter, Ilene Fortunato Ingrassia (real party in interest), filed a petition for letters of administration, alleging that the decedent had died intestate. A few days later, real party in interest filed a petition for letters of special administration, alleging that decedent had purportedly executed a will on December 20, 1994, but that it had not been executed as required by law and therefore had no effect, or it was revoked or presumed revoked prior to death, or procured by fraud or undue influence.

A week or two later, decedent's brother, Anthony M. Fortunato (petitioner here), filed a petition to probate the decedent's 1994 will, and the two matters were later consolidated.[1] The will left essentially all of decedent's real and personal property to Anthony, and included a provision disinheriting his ex-wives, children, and grandchildren, "to the fullest extent permitted by law." Real party in interest filed a will contest alleging, among other things, that Anthony used undue influence to cause the decedent to execute the will.

In June 2003, real party in interest caused a subpoena duces tecum to be served on Washington Mutual Bank, requesting the production of nine categories of documents relating to a particular loan, as well as any documents relating to any loan made to or guaranteed by the decedent or Anthony, or to any account on which either was a signatory. Anthony objected to the subpoena only insofar as it sought discovery of his personal tax returns, which he had submitted to the bank in connection with a home loan, and he filed a motion for protective order to prevent their production.

Prior to hearing on the motion for protective order, real party in interest and her brother, Stewart Fortunato, filed a petition under Probate Code section 850 for an order transferring certain property to the estate, including

---

[1] Since there were many petitions and real party in interest was the petitioner in the probate court, but not here, we shall defer referring to Anthony Fortunato as the petitioner until the next section, in order to avoid confusion; and we refer to him by his first name, since he and others share a surname.

real property in Long Beach that had been decedent's residence. It is alleged that the decedent and Anthony held the property in joint tenancy in order to avoid the payment of back taxes owed by decedent. The section 850 petition also alleges that a previous section 850 petition was filed with regard to a bonded warehouse and distribution business owned by Anthony, allegedly in trust for the decedent due to the decedent's understanding that as a convicted felon, he could not own an interest in it. That petition is not in the record before us.

When the probate court denied Anthony's motion for protective order relating to his tax return, Anthony filed a petition for writ of mandate with us. We stayed the production of Anthony's tax returns, and on September 16, 2003, we issued an order to show cause why a writ should not issue reversing the trial court's order.

## DISCUSSION

We are called upon to decide whether petitioner's submission of his personal tax returns to a bank for the purpose of obtaining a loan effected a waiver of his privilege against forced disclosure of the returns, or whether the privilege was otherwise rendered inapplicable. We answer both questions in the negative.

The California Supreme Court has held that Revenue and Taxation Code section 19282, which prohibits disclosure of tax returns, implicitly creates a privilege against the disclosure of income tax returns. (*Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621].) The privilege may be waived by an intentional relinquishment of it. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 721 [21 Cal.Rptr.2d 200, 854 P.2d 1117].) In addition, it is inapplicable where the gravamen of the lawsuit is inconsistent with claiming the privilege, or where a public policy greater than the purpose of the privilege is involved. (*Id.* at p. 721.)

Waiver by voluntary relinquishment occurred, for example, in *Crest Catering Co. v. Superior Court* (1965) 62 Cal.2d 274 [42 Cal.Rptr. 110, 398 P.2d 150], where an employer had promised in a union-employer trust agreement to "furnish all necessary information upon demand" regarding its payroll, but all its books and records were destroyed in a fire, leaving the employer's tax returns as the only source of the required information. In an action brought by the union, the Supreme Court held that by promising to provide payroll information, the employer had relinquished its claim of privilege in tax returns that showed all of the promised information. (*Id.* at p. 278.)

In another case, waiver was found where a husband had executed a stipulated judgment of dissolution, in which each spouse agreed, " 'on the

demand of the other, to execute or deliver any instrument, furnish any information, or perform any other act reasonably necessary to carry out the provisions of this agreement without undue delay or expense' "; and his W-2P forms were necessary to the wife's determination of her half-interest in his retirement pay. (*In re Marriage of Parks* (1982) 138 Cal.App.3d 346, 349 [188 Cal.Rptr. 26].)

Neither the parties nor we have found any reported case in which a waiver has been based upon a party's submission of his or her tax returns to a bank as part of a loan application. Real party in interest cites Weil & Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003) paragraph 8:113.3, page 8C-15, in which the authors suggest that Evidence Code section 912, subdivision (a), is applicable to the tax-return privilege. Section 912 provides, with some exceptions, that the disclosure to a third party of a material part of a privileged communication, such as a lawyer-client, confidential marital communication, or other enumerated statutory privileges, will effect a waiver of the statutory privilege.[2]

Even though the tax-return privilege is not one of those enumerated in Evidence Code section 912, and its provisions are therefore inapplicable to tax returns, Weil and Brown conclude that under authority of section 912, anyone who submits copies of his or her tax returns with a loan or credit application waives the privilege.[3] They suggest as a "practice pointer" that attorneys "*determine every potential lender* with whom the [opposing] party may have dealt; and then subpoena the lenders' files for copies of the party's tax return." (Weil & Brown, *supra*, ¶ 8:113.3.)

■ Attorneys eagerly following that advice, however, will find that tax returns submitted to a bank with a loan application are not protected *solely* by the privilege enunciated by the California Supreme Court in *Webb v. Standard Oil Co., supra,* 49 Cal.2d 509. A bank customer reasonably expects the bank to maintain the confidentiality of private financial matters. (*Burrows v. Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590].) While there is no "bank-customer privilege akin to the lawyer-client privilege" or other statutory privileges, confidential financial information given to a bank by its customers is protected by the right to privacy that became a part of the California Constitution after the judicial formulation of

---

[2] See also, Wegner et al., California Practice Guide: Civil Trials and Evidence, (The Rutter Group 2003), paragraph 8:2592, page 8E-156, where the authors state: "A taxpayer also waives the privilege by voluntarily disclosing tax return information to third persons, or otherwise making the information a public record," citing *In re Marriage of Parks, supra,* 138 Cal.App.3d at page 349, which did not involve a disclosure to third persons.

[3] Although the statutory privileges and their exceptions are not applicable to privacy claims or the tax-return privilege, they may provide analogous reasoning in the appropriate case. (See *Britt v. Superior Court* (1978) 20 Cal.3d 844, 857–859 [143 Cal.Rptr. 695, 574 P.2d 766].)

the tax-return privilege. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977]; Cal. Const., art. I, § 1.) Thus, there is a right to privacy in confidential customer information *whatever* form it takes, whether that form be tax returns, checks, statements, or other account information. (See *ibid.*; *Schnabel v. Superior Court, supra*, 5 Cal.4th at pp. 712–713.)

Even if confidential customer information is not "wholly privileged [or] insulated from scrutiny by civil litigants," a court faced with a motion for protective order should carefully balance "the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." (*Valley Bank of Nevada v. Superior Court, supra*, 15 Cal.3d at p. 657.) Considerations should include " 'the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances.' [Citation.]" (*Id.* at p. 658.)

Thus, even upon a potential finding of waiver, the probate court should have conducted an in camera inspection, where it might have concluded that the tax returns were insufficiently probative to justify disclosure, and that real party in interest's need for discovery did not outweigh petitioner's privacy interests. If it had done so, this proceeding might have been made unnecessary.

But the probate court considered none of the balancing factors, because petitioner did not stand on his constitutional right to privacy, and made no request for such balancing, preferring that his right to relief stand or fall on the issue of privilege. And, of course, since petitioner did not request the exercise of such discretion, we have nothing to review with regard to that issue. (See *Agricultural Labor Relations Bd. v. Laflin & Laflin* (1979) 89 Cal.App.3d 651, 666–667, fn. 16 [152 Cal.Rptr. 800].) Nevertheless, we believe that the constitutional right of privacy in financial documents in a bank's possession has bearing upon the question of whether the tax-return privilege was waived in this case.

■ More compelling, however, is the absence of a truly *voluntary* relinquishment. A tax return that has been produced under court order is not a voluntary relinquishment, and does not, therefore, effect a waiver of the privilege. (*Thomas B. v. Superior Court* (1985) 175 Cal.App.3d 255, 263 [220 Cal.Rptr. 577].) Similarly, and "[f]or all practical purposes, the disclosure by

individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account." (*Burrows v. Superior Court*, *supra*, 13 Cal.3d at p. 247.) Nor do we view compliance with a bank's requirement of submitting tax returns with a loan application to be an entirely voluntary relinquishment, since that, too, is a fact of economic life, to which any home or business owner can attest.

■ The waiver of both privileges and the constitutional right to privacy "must be narrowly rather than expansively construed," in order to protect the purposes of the privilege or right. (*Britt v. Superior Court*, *supra*, 20 Cal.3d at p. 859.) The purpose of the tax-return privilege is to encourage voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection. (*Webb v. Standard Oil*, *supra*, 49 Cal.2d at p. 513.) It does this by assuring the taxpayer that such voluntary filing and truthful reporting will not result in a loss of confidentiality. (*Deary v. Superior Court* (2001) 87 Cal.App.4th 1072, 1081 [105 Cal.Rptr.2d 132].) Routinely forcing a taxpayer to produce a copy of his or her tax returns in litigation would effectively defeat the legislative purpose. (*Webb v. Standard Oil*, *supra*, 49 Cal.2d at p. 513.) Given the well-recognized practice of requiring tax returns as part of a loan application, it follows that forcing a bank to produce those returns routinely in litigation would have the same effect as forcing the taxpayer to produce them directly, and that, too, would effectively defeat the legislative purpose.

Real party in interest contends that a distinction should be made with regard to loan applications where, as here, the parties were coborrowers and the loan was obtained to purchase property to be held in joint tenancy, and that same property is at issue in the petition filed under Probate Code section 850. Real party in interest's assertion shows only that petitioner's tax returns *might* be relevant to the issues in controversy, but relevance alone will not render a privilege inapplicable. (*Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 274 [125 Cal.Rptr.2d 371].)

Real party in interest points out that, as a joint tenant, petitioner was decedent's fiduciary. (See *Aaron v. Puccinelli* (1953) 121 Cal.App.2d 675, 677 [264 P.2d 152].) She contends that for that reason, petitioner could not have had a reasonable expectation of confidentiality in the information he agreed to provide to the bank to obtain the loan for the jointly owned property.

We assume that real party in interest's point is based upon the general duty of full disclosure fiduciaries owe to one another. (See *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188–189 [98 Cal.Rptr. 837,

491 P.2d 421].) Real party in interest has not proffered authority creating a broad exception to the privilege based upon a fiduciary's duty of disclosure, but assuming its existence only for discussion, we observe that such a duty is not without limit, and extends only to facts that materially affect the beneficiary's rights and interests. (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 130 [1 Cal.Rptr.3d 528].) Real party in interest's Probate Code section 850 petition alleges that petitioner applied for the joint loan because decedent did not have sufficient creditworthiness, and because having petitioner's name on the title would in some way help decedent to avoid a federal tax liability. Real party in interest does not explain just how the contents of petitioner's personal tax returns would have materially affected decedent's right to use petitioner's name for those purposes. There might conceivably be such a correlation, but it has not been established here.

Finally, referring to the general discovery provisions of the Probate Code, real party in interest contends that the public policy favoring full and frank disclosure in probate proceedings outweighs the purpose of the tax-return privilege. (See e.g., Prob. Code, §§ 8870–8873.)

Civil discovery statutes promote the important public policy of facilitating " ' "the ascertainment of truth and the just resolution of legal claims." ' " (*Marylander v. Superior Court* (2000) 81 Cal.App.4th 1119, 1127 [97 Cal.Rptr.2d 439].) The public-policy exception to the tax-return privilege, "[h]owever, . . . is narrow, and only applies 'when warranted by a legislatively declared public policy.' [Citation.]" (*Deary v. Superior Court, supra*, 87 Cal.App.4th at p. 1080.) Further, the public policy must be a compelling one, and exceptions on this ground will be declared only rarely. (*Weingarten v. Superior Court, supra*, 102 Cal.App.4th at p. 276.) Public policy favoring discovery in civil litigation is not, by itself, sufficiently compelling to overcome the privilege. (*Id.* at pp. 275–276.) Indeed, such an exception would swallow the rule.

## DISPOSITION

The petition is granted, and a writ of mandate shall issue commanding the trial court to vacate its order denying petitioner's motion for protective order with regard to his personal tax returns, and to issue a new order granting the requested protection. Petitioner shall have his costs in these proceedings.

Vogel (C.S.), P. J., and Curry, J., concurred.