Filed 2/24/15  Lone Oak Fund v. Cal. Franchise Tax Board CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| LONE OAK FUND, LLC, | B252812 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC509434) |
| v. | |
| CALIFORNIA FRANCHISE TAX BOARD, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Reversed and remanded.

Early Sullivan Wright Gizer & McRae LLP, Eric P. Early, Scott E. Gizer and Allison S. Hyatt for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, W. Dean Freeman and Anthony Sgherzi, Deputy Attorneys General for Defendant and Respondent.

Plaintiff and appellant Lone Oak Fund, LLC (Lone Oak) appeals an order directing it to pay monetary sanctions of $8,000 to the State of California following the denial of Lone Oak's motion to compel production of documents by defendant and respondent California Franchise Tax Board (FTB).

The essential issue presented is whether the withheld documents are privileged pursuant to Revenue and Taxation Code section 19542, which prohibits disclosure of "information as to the amount of income or any particulars . . . set forth or disclosed" in "returns, reports, or documents required to be filed under this part." (*Ibid.*)[1]

For the reasons discussed below, we reverse and remand for further proceedings with respect to the motion to compel. Our resolution of the discovery issue also requires reversal of the order imposing sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Lone Oak's complaint.*

On May 20, 2013, Lone Oak filed a complaint to quiet title to the subject real property located at 4465 Gould Avenue in La Canada-Flintridge, alleging it made a $1.5 million refinance loan and held a first priority lien on the property. The complaint named as defendants the FTB, Bank of America, and other lienholders claiming an interest in the real property over Lone Oak's first priority lien.

The complaint included a cause of action against Bank of America alleging fraud in connection with the short sale transaction by which Lone Oak's borrower, Hamlet

---

[1]  Revenue and Taxation Code section 19542 states: "Except as otherwise provided in this article and as required to administer subdivision (b) of Section 19005, it is a misdemeanor for the Franchise Tax Board or any member thereof, or any deputy, agent, clerk, or other officer or employee of the state (including its political subdivisions), or any former officer or employee or other individual, who in the course of his or her employment or duty has or had access to returns, reports, or documents required to be filed under this part, to disclose or make known in any manner information as to the amount of income or any particulars (including the business affairs of a corporation) set forth or disclosed therein."

All further statutory references are to the Revenue and Taxation Code, unless otherwise specified.

2

Betsarghez, purchased the property from Avetis Avesyan. Lone Oak pled that Bank of America falsely represented in the short sale approval letter that it had authorized a short sale of the property to Betsarghez for $250,000 and that it would accept $250,000 in full satisfaction of its deeds of trust and would thereafter release its deeds of trust. Despite Bank of America's representations, on September 23, 2011, about 16 days after the Lone Oak loan closed, the bank rejected the Avesyan/Betsarghez short sale transaction and returned the $250,000 to Provident Title Company, on the stated grounds that there was no active short sale.

As against the FTB, Lone Oak pled the FTB's claim was "without any right or validity, as [it had] no right, title, estate, lien, or interest in the Property, because [its] lien[] [had] been fully satisfied."

Lone Oak's basic theory is that the various defendants received payoff funds "for their respective security interests, liens, and encumbrances on the property and/or agreed to remove their liens against the property," and Lone Oak sought to establish the superiority of its lien.

2. *The FTB's answer.*

The FTB answered, denying it had received payment in exchange for releasing its lien and denying "that a release of lien was ever agreed to or perfected." To evidence its interest in the subject property, the FTB appended to its answer, as Exhibit A, a Certificate of Tax Due and Delinquency, indicating Avesyan had a total liability of $585,553.01 as of May 29, 2013.

3. *Lone Oak's request for production of documents.*

On July 1, 2013, Lone Oak propounded a request for production of documents (RFP) to the FTB, requesting, inter alia: documents concerning any demand payoff letters issued by the FTB regarding the property (RFP No. 7); communications between the FTB and third parties, including Oshana Escrow and AAA Escrow, concerning the property (RPF Nos. 8-11); communications between the FTB and Mary Der-Parseghian (Lone Oak's attorney) concerning Lone Oak (RFP Nos. 12-13); documents concerning the FTB's receipt of funds in connection with any attempted or actual payoff of its liens

3

on the property (RFP No. 16); and documents sent to the FTB in connection with any attempted or actual purchase of the property (RFP No. 17).

4. *The FTB's response to the RFP and objections.*

The FTB objected to the RFP and asserted Lone Oak was seeking "disclosure of information that is proprietary or confidential (see Article 1, Section 1 of the California Constitution [right to privacy], Revenue and Taxation Code sections 19542, et seq., Government Code section 6254(k) [exemption of certain records from disclosure under California Public Records Act], and Evidence Code section 1040 [privilege for official information].)" [2]

However, the FTB did produce the following documents: (1) a Certificate of Tax Due and Delinquency dated May 29, 2013, which had been attached as an exhibit to the FTB's answer, indicating a tax liability of $585,553.01; (2) a Notice of State Tax Lien recorded in Los Angeles County on October 17, 2008, indicating Avesyan owed $11,261.35 for the 2004 tax year; and (3) a Notice of State Tax Lien recorded in Los Angeles County on July 25, 2012, indicating a total lien amount of $564,927.65.

The FTB also produced a privilege log identifying the documents it had withheld pursuant to section 19542. The documents were described as follows: (1) taxpayer information screen prints for Avesyan (pp. 1-23); (2) Demand for Payment of State Tax Lien for Avesyan (p. 24); (3) Accounts Receivable Collection System (ARCS) case printout for Avesyan (pp. 25-32); (4) ARCS case printout for Avesyan (pp. 33-35); (5) collector's file for Avesyan (pp. 36-44); and (6) information submitted for a federal case initiated by Avesyan (pp. 45-49).

5. *Lone Oak's motion to compel.*

On September 26, 2013, Lone Oak filed a motion to compel further response to the RFP, seeking the withheld documents to establish the superiority of its lien. Lone Oak contended that section 19542 was inapplicable because Lone Oak was not seeking the disclosure of tax return information. Rather, Lone Oak merely was seeking "evidence

---

[2] At this juncture, the FTB solely relies on the tax return privilege of section 19542.

4

regarding [the FTB's] lien on the property and the circumstances surrounding [the FTB's] release of its lien." Lone Oak also requested sanctions in the amount of $4,500 for having to bring the motion to compel.

6. *The FTB's opposition to the motion to compel.*

In response, the FTB indicated "the heart of [its] objections are based upon its assertion that all of the requested information sought by plaintiff . . . is protected from disclosure by section 19542." The FTB argued the language of the statute is broad in its scope and barred disclosure of all the documents in issue. The FTB also relied on federal statutory and case law to support its expansive interpretation of section 19542.

In addition, the FTB requested monetary sanctions of $13,750 for what it deemed "plaintiff's abuse of the discovery process." The FTB argued that in light of section 19542, Lone Oak lacked substantial justification for bringing the motion to compel.

7. *Trial court's ruling.*

On November 4, 2013, the matter came on for hearing.

Lone Oak's counsel asserted that section 19542 "does not prohibit disclosure of the information that they're withholding. The statute -- the plain language of the statute prevents a disclosure of tax returns, income, or any other particulars contained in the tax return. We are not seeking tax returns. We're not seeking information in the tax returns. We are not requesting income, W-2's, or anything like that. We're requesting documents relating to the property that were provided to third parties; that were provided to the taxpayer regarding the property which is not prohibited from disclosure by the statute."

The FTB, in turn, relied on the language of section 19542 to argue disclosure was prohibited, and that Lone Oak should seek the information from "the taxpayer, . . . the escrow company, . . . from anyone else they want to, but we cannot provide liability information regarding [a] third party taxpayer."

After hearing arguments of counsel, the trial court denied Lone Oak's motion to compel and ordered it to pay the state monetary sanctions of $8,000.

Lone Oak filed a timely notice of appeal from the order.

5

**CONTENTIONS**

Lone Oak contends: review of the trial court's substantive ruling on the discovery motion is necessary to review the sanction award; the trial court abused its discretion in allowing the FTB to unilaterally withhold responsive discovery under section 19542; the FTB cannot refuse to produce discoverable documents without demonstrating that such evidence falls within a specific privilege; the trial court erred in construing section 19542 as an "absolute" privilege; the FTB did not meet its burden to demonstrate the withheld documents are covered under the tax return privilege; the language in the United States Code relied on by the FTB differs from the language used in section 19542; Evidence Code section 1040 is inapplicable; and at a minimum, the imposition of sanctions should be reversed.

**DISCUSSION**

1. *Appealability; both the $8,000 sanctions order and the denial of the motion to compel are appealable.*

An order directing payment of monetary sanctions over $5,000 is immediately appealable. (Code Civ. Proc., § 904.1, subd. (a)(12); *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 264 (*Mileikowsky*), disapproved on another ground in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)

In addition, at this juncture, Lone Oak can challenge the merits of the trial court's decision denying its motion to compel. Ordinarily, a discovery order is not separately appealable. (*Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1049.) However, the trial court's decision on a discovery matter is immediately reviewable if it "necessarily affects" an appealable order. (Code Civ. Proc., § 906.) Thus, if a nonappealable substantive ruling on a discovery matter is "inextricably intertwined" with an appealable order directing monetary sanctions, the substantive ruling may be reviewed at the same time. (*Mileikowsky*, *supra,* 128 Cal.App.4th at p. 276.)

6

2. *Privilege for tax returns.*

   a. *Overview.*

California recognizes an implied privilege against forced disclosure of tax returns in civil discovery proceedings. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 719.) The privilege arises from California statutes, such as section 19542, that generally prohibit California tax authorities from disclosing tax return information, subject to certain exceptions. (*Firestone v. Hoffman* (2006) 140 Cal.App.4th 1408, 1419; see *Fortunato v. Superior Court* (2003) 114 Cal.App.4th 475, 479 [§ 19282 (§ 19542's predecessor) prohibiting disclosure of tax returns implicitly created privilege against disclosure of tax returns].) The purpose of the privilege is to facilitate tax enforcement by encouraging taxpayers to make full and truthful declaration in their returns, without fear that their statements will be revealed or used against them for other purposes. (*Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513.)

The privilege applies to the return itself and also "protect[s] the information contained in the returns." (*Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 7 (*Sav-On*).) For example, in *Sav-On*, which was a class action against defendant retailers including petitioner Sav-On, an interrogatory asked "what specific deductions or adjustments petitioner made in respect to sales tax returns for the years 1967-1971, inclusive. . . ." (*Id.* at p. 4.)

In granting relief from responding to the interrogatory, *Sav-On* explained that "attempts to avoid the application of the privilege by indirect means could not be tolerated. [Citation.] Real party in interest's interrogatory 40 appears to be such an attempt. While not asking either for the return itself or a copy, the question does seek information concerning specific entries in the return. To require petitioner to respond to such an inquiry would render meaningless the privilege . . . . Assuming Revenue and Taxation Code section 7056 protects the returns themselves, *it is reasonable to conclude that it must also protect the information contained in the returns*. The writ of prohibition must issue as to interrogatory 40." (*Sav-On*, *supra*, 15 Cal.3d at p. 7, italics added.)

7

The section 19542 privilege also extends to other documents or information that are an "integral part of the [tax] return" such as W-2 forms (showing the taxpayer's earnings), which are required to be attached to a taxpayer's state and federal income tax returns. (*Brown v. Superior Court* (1977) 71 Cal.App.3d 141, 143.)

b. *The scope of section 19542's privilege; statute prohibits disclosure of taxpayer's income or any particulars contained in any required returns, reports or documents.*

Section 19542 makes it a misdemeanor for an FTB employee, "who in the course of his or her employment or duty has or had access to *returns, reports, or documents required to be filed under this part*,[3] to disclose or make known in any manner *information as to the amount of income or any particulars* (including the business affairs of a corporation) *set forth or disclosed therein*." (Italics added.) Thus, the controlling statute bars the FTB from disclosing the amount of a taxpayer's income "or any particulars" contained in any "returns, reports, or documents" which are required to be filed.

3. *The case at bench.*

Guided by the above, we address the six withheld documents that were identified in the FTB's privilege log. As indicated, the documents were described as follows: (1) taxpayer information screen prints for Avesyan (pp. 1-23); (2) Demand for Payment of State Tax Lien for Avesyan (p. 24); (3) Accounts Receivable Collection System (ARCS) case printout for Avesyan (pp. 25-32); (4) ARCS case printout for Avesyan (pp. 33-35); (5) collector's file for Avesyan (pp. 36-44); and (6) information submitted for a federal case initiated by Avesyan (pp. 45-49).

Clearly, none of these documents were returns filed by the taxpayer.

The remaining question is whether these documents contained information derived from "returns, reports, or documents" that were required to be filed. (§ 19542.)

---

[3]     Section 19542 is found in Part 10.2, Administration of Franchise and Income Tax Laws, section 18401 et seq.

Information gathered from such filings is privileged and therefore nondiscoverable. However, given the limited record that was developed below, the applicability of the statutory privilege cannot be determined at this juncture. The FTB, as the party asserting the privilege, had the initial burden to show the privilege applies. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 730.) However, the FTB did not make a preliminary showing that the six documents at issue contained information that was obtained from returns, reports or document that were required to be filed. The FTB's privilege log did not describe the nature of the information in the documents identified therein. There was no indication as to whether these documents contained information that came from taxpayer returns, whether there was some non-privileged information in the documents, or whether the documents in their entirety consisted of privileged information – i.e., information derived from "returns, reports, or documents" that were required to be filed. (§ 19542.)

Now that the statute has been clarified, the matter shall be remanded to the trial court to conduct an evidentiary hearing to determine whether, and to what extent, the six withheld documents are privileged.[4] The inquiry on remand is whether these six documents contain information derived from "returns, reports, or documents required to be filed under this part." (§ 19542.) While such information is privileged and hence nondiscoverable, information obtained from other sources is *not* privileged under 19542. If the trial court determines there is nonprivileged information in these documents, it shall direct the FTB to provide Lone Oak with redacted versions thereof.

Once the FTB elucidates the source of the information contained in the six withheld documents, the trial court will be in a position to determine whether, and to what extent, the privilege of section 19542 applies.

---

[4] The trial court cannot require in camera disclosure of the information claimed to be privileged in order to rule on the claim. (Evid. Code, § 915, subd. (a); *Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 45, fn. 19; *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 736.)

4. *Sanctions*.

Our resolution of the discovery issue establishes that Lone Oak acted with substantial justification in bringing the motion to compel further responses to its RFP. (Code Civ. Proc., § 2023.030, subd. (a); *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 749.)  Therefore, the sanctions order was in error.

## DISPOSITION

The order denying the motion to compel is reversed and the matter is remanded for further proceedings, guided by the principles set forth herein.  The sanctions order also is reversed.  Lone Oak shall recover its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:



KITCHING, J.



LAVIN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.